■ JOACHIM UMARAN-DAVILA, Respondent, v CLARICE CARSON, Appellant. — Order entered August 6, 1982, Supreme Court, New York County (H. Schwartz, J.), denying defendant's motion for summary judgment, affirmed, with costs. Typed and handwritten into the standard "Blumberg" form is a paragraph (par 21 [b]) which states: "Accordingly, notwithstanding anything to the contrary contained in this Contract of Sale * * * (b) This Contract of Sale is conditional upon and subject to the building actually being converted to cooperative ownership, the conveyance of the title to the Building to 10 West 66th Street Corporation, and the purchase and acquisition by the Seller of the Shares and Lease in which event the Down Payment will be returned to Purchaser."(Underscored matter handwritten in and initialed by both parties.) When the three conditions occurred the $100,000 "down payment" was *not* returned, and the parties sharply dispute the meaning of this clause. Both sides present facially plausible versions of what took place and what their agreement was meant to accomplish. We agree with Special Term that a trial on the merits can best resolve these factual questions. Certainly appellant should not be allowed to retain respondent's $100,000 simply by bringing a motion for summary judgment, in light of the ambiguity in the above paragraph. Concur — Kupferman, J. P., Carro, Silverman and Fein, JJ.

Kassal, J., dissents in a memorandum as follows: I dissent and would

reverse, grant defendant's motion for summary judgment, dismiss the complaint and declare that defendant is entitled to retain the $100,000 down payment as a result of plaintiff's breach of contract in failing to proceed to closing. The facts, which could be *properly* established at trial, are clear on this record. Defendant, who resided at apartment 28C at 10 West 66th Street, New York City, entered into a written agreement with plaintiff on April 16, 1981, which was on a standard printed Blumberg form, No. W123, entitled "CONTRACT OF SALE — COOPERATIVE APARTMENT". Under this agreement, the plaintiff as "Purchaser", agreed to purchase all of the defendant's shares, as "Seller" in her apartment building co-operative corporation, subject to three conditions: (1) the conversion to co-operative ownership; (2) the conveyance of building title to 10 West 66th Street Corporation, the co-operative corporation; and (3) the acquisition by defendant of the co-operative shares and lease. The agreement sets forth a purchase price of $600,000, to be paid by a down payment of $100,000, which payment was made, and the balance of $500,000 was to be paid at the closing on January 15, 1982. In the printed agreement, there was inserted a typewritten paragraph 21, which reads as follows: "The parties hereto acknowledge that the Building has not yet been converted to cooperative ownership and management (10 West 66th Street being referred to herein as the 'Building') but is the subject of an Offering Plan to convert to cooperative ownership (the 'Plan') and that the Seller, although a tenant in the Apartment and subscriber for the Shares pursuant to the Plan, is not yet the owner of the Shares or a tenant shareholder under the Proprietary Lease. Accordingly, notwithstanding anything to the contrary contained in this Contract of Sale * * * b) This Contract of Sale is conditional upon and subject to the building actually being converted to cooperative ownership, the conveyance of the title to the Building to 10 West 66th Street Corporation, and the purchase and acquisition by the Seller of the Shares and Lease *in which event the Down Payment will be returned to Purchaser.*" (Italicized words handwritten in original contract.) It is undisputed that each of the three conditions had been completely fulfilled since the building was converted to co-operative ownership, the corporation took title May 1, 1981, and defendant took title to the shares covering this apartment. Thereafter, on July 27, 1981, plaintiff was approved by the board of directors. It is patently clear that the approval was preceded by an application, prepared and filed by plaintiff for that purpose. However, the agreed-upon closing between plaintiff and defendant was never held. Instead, plaintiff demanded return of the $100,000, contending that the payment was in the nature of a loan to facilitate defendant's purchase of the co-operative shares and not, as is expressly set forth in the contract, as a down payment to be applied toward the purchase price. The agreement provided for default by the purchaser in paragraph 15 as follows: "If Purchaser defaults hereunder, Seller's sole remedy shall be to retain as liquidated damages the down payment mentioned in Paragraph 3, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the down payment constitutes a fair and reasonable amount of damages in the circumstances. If Seller willfully defaults, Purchaser shall have such remedies as he is entitled to at law or in equity, including but not limited to specific performance because the Apartment and possession thereof cannot be duplicated." The contract of sale also contained the usual provisions in paragraph 16 providing for merger of all representations, understandings and agreements between the parties, directing that "this agreement * * * alone fully and completely expresses their agreement." Paragraph 17 further directs that the contract may not be "changed, discharged or terminated orally." Simultaneously with the execution of the standard Blumberg form contract the parties

entered into a further typewritten "AGREEMENT", acknowledging the foregoing "Contract of Sale" and that plaintiff has "paid down on said Contract the sum of $100,000". This agreement provided for a return to plaintiff of "all monies paid down" only if plaintiff were not approved by the co-operative board. The only express provision in the contract for return of the down payment provides as follows: "2. In the event UMARAN shall not be approved by the Co-op Board as required by said contract, CARSON agrees to obtain another purchaser for said apartment. Upon such closing thereof, CARSON agrees to return all the monies paid down by UMARAN. In any event, CARSON shall be obligated to return all monies paid down within six months from the date hereof if UMARAN is not approved by the Co-op Board for purchase here." In addition, they executed a third, separate letter agreement, likewise dated April 16, 1981, which obligated plaintiff to pay future maintenance on the apartment if the closing were not held prior to October 15, 1981, but with "no abatement of the purchase price." The second cause of action, sounding in fraud, alleges that to induce plaintiff to execute the agreement, defendant represented that she did not have sufficient funds to purchase the co-operative shares and proprietary lease. As a result, plaintiff allegedly advanced $100,000 as a loan to facilitate the purchase. The pleading, however, is wholly deficient in that it fails to particularize the claimed fraud and is therefore insufficient as a matter of law (CPLR 3016, subd [b]). Nor is there any claim or suggestion of fraud in plaintiff's affidavit submitted in opposition to the motion for summary relief. Accordingly, plaintiff has failed to lay bare evidentiary proof as he was required to do on the motion for summary judgment (CPLR 3212, subd [b]). In her answer, defendant relied upon the clear terms of the agreements, claiming that the $100,000 payment was exactly what was provided therein in express words, i.e., a down payment paid by plaintiff at the time of execution toward a total purchase price of $600,000, with the balance ($500,000) to be paid at closing. Inasmuch as each of the three conditions set forth in the agreement had been satisfied and plaintiff failed and refused to proceed to closing, defendant claimed that she was entitled to retain the down payment as liquidated damages. Contrary to the finding of Special Term, affirmed by the majority on this appeal, there is no factual issue as to the underlying nature of the obligation entered into by plaintiff or the nature of the payment he made. The terms of the agreement are conventional, clear, simple and unambiguous. The only circumstance which entitled the purchaser to a return of the deposit was the failure of the co-operative board to approve him as a tenant. Each of the three conditions to the contract having been satisfied, including the approval of plaintiff by the board, he was obligated to proceed to closing. His default permitted the seller to retain the down payment as liquidated damages. I do not subscribe to the view expressed by the majority that the handwritten language in paragraph 21(b) of the contract raises in issue whether the down payment was to be returned to plaintiff after the three conditions had been satisfied. The inserted handwritten language reads: "in which event the Down Payment will be returned to Purchaser." This does support the clear intent of the parties upon nonapproval of plaintiff as a purchaser, as evidenced by the last sentence of paragraph 2 of the typewritten "AGREEMENT," quoted *supra*. Plaintiff's version is not "facially plausible", as is concluded by the majority. To the contrary, it is patently and directly in conflict with the clear and express terms of each of the three agreements entered into between the parties. Further, it ignores the very actions taken by this plaintiff in executing and filing an application, submitting requisite financial information and taking other steps, such as appearing before the co-operative board to secure its approval and consent. How else would his

application for purchase be approved? The record establishes beyond question that the arrangement between these parties, plainly and simply, was a contract to purchase defendant's co-operative shares. In addition to the express terms of the contract, the extensive correspondence, consisting of the exchange of at least 13 letters, both with plaintiff's former and his present attorney relating to the date of "closing," repeatedly refers to the underlying transaction as a "purchase" of defendant's co-operative shares. Additional correspondence concerns (1) the steps taken by plaintiff to secure the approval of the co-operative board, (2) his approval and notice thereof from the managing agent of the building, dated July 27, 1981, three months after execution of the contract, approving the transfer of the co-operative shares from defendant to plaintiff, and (3) the contract requirement that plaintiff assume payment of the maintenance charges on the apartment pending closing of title. It was not until well after the present attorney had apparently been retained that the new and novel theory was first devised and presented, that the down payment was actually a loan — obviously an afterthought. The clearest evidence of the parties' actual intent is manifested by the exchange of letters before and after the approval of plaintiff's application by the co-operative board:

### Letters, Dates Thereof and Sending Party

May 6, 1981 — Plaintiff's attorney — acknowledging "the closing has taken place and that the co-op is now the possession of Ms. Carson." It also seeks advice about "procedures * * * *to make application to the board*" (emphasis added).

May 9, 1981 — Plaintiff's attorney — amending last date for application by purchaser to co-op corporation *for approval.*

July 27, 1982 — Sulzberger-Rolfe, Inc. (managing agent of co-op corporation) approving application "Carson to Umaran-Davila".

October 2, 1981 — Plaintiff's attorney — acknowledging plaintiff's obligation to pay "maintenance of the apartment on October 15, 1981" and requesting the bill.

October 15, 1981 — Defendant's attorney — seeking one half of October maintenance and inquiring about "closing."

December 9, 1981 — Defendant's attorney — fixing *closing date* for January 15, 1982.

January 8, 1982 — Plaintiff's attorney — seeking a "reasonable adjournment" of the closing date.

January 8, 1982 — Defendant's attorney — fixing the closing date of January 15, 1982 at the office of managing agent Sulzberger-Rolfe, Inc. *"as per Contract made April 16, 1982"* (emphasis added).

January 12, 1982 — Defendant's attorney — confirming "that closing has been scheduled for January 15, 1982 as per letter of January 8, 1981 and as per *the terms of the Purchase and Sale Agreement*" (emphasis added).

January 14, 1982 — Plaintiff's attorney — requesting a meeting during the week of January 18 to "finally resolve the matter of a *closing date*" (emphasis added).

January 18, 1982 — Defendant's attorney — acknowledging a substituted attorney for plaintiff and referring for the *"adjourned date to close"* (emphasis added).

January 18, 1982 — Plaintiff's new attorney — acknowledging his representation of plaintiff *"in the closing of the purchase of the above apartment from* your client, Ms. Carson." (Emphasis added.) He further discusses the absence of a " 'time is of the essence' " clause in the *"purchase agreement"* and seeks a "copy of the *purchase agreement*" to fix a new closing date (emphasis added).

January 19, 1982 — Defendant's attorney — seeking a specific "date to close title".

January 27, 1982 — Plaintiff's attorney — delaying "establishing the new closing date".

February 4, 1982 — Plaintiff's attorney — fixing the date as "the earliest my client expects to close is April 30, 1982". Further, he states "if your client has *another buyer and wants to be released to close earlier*" (emphasis added). The last paragraph *for the first time* requests the "formal demand for the return" of the $100,000 by February 16, 1982.

February 8, 1982 — Two letters from defendant's attorney to plaintiff and his attorney rejecting the February 4, 1982 demands and fixing May 7, 1982 as the closing date.

February 12, 1982 — Plaintiff's attorney — referring to the "purchase of your above cited premises by our client".

February 15, 1982 — Plaintiff's attorney — canceling the May 7, 1982 "closing" date.

All of the foregoing completely reject any logical contention that this $100,000 was only a loan, as plaintiff claims. It is incredible to accept that position in light of the extensive correspondence between the parties' attorneys, all in terms of their purchase agreement, his application for approval as purchaser and the several closing dates. It is obvious that this demand on February 4, 1982, for the return of the $100,000 after at least 14 letters between the attorneys was clearly planned by plaintiff's present attorney, who came onto the scene almost six months after the plaintiff had been approved for this purchase and eight months after defendant purchased the apartment. While summary relief under CPLR 3212 is inappropriate where factual issues are shown to exist, there must be *genuine* triable issues, not contrived arguments merely designed to forestall the inevitable entry of judgment on the merits. A bona fide triable issue must be established (*Two Clinton Sq. Corp. v Gorin Stores*, 51 AD2d 643, 644). Reliance upon mere suspicion or surmise that there exists a possible defense or claim is insufficient (*Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338). The issue must be shown to be real, not fanciful. Here, taking into account the very terms of the agreements, the actions by and the underlying circumstances of the parties, the claim now advanced that the initial payment was merely a loan "is not real but feigned, in short * * * it is sham or frivolous" (*Sprung v Jaffe*, 3 NY2d 539, 543). In light of the clarity of the terms contained in the agreement, plaintiff may not contend that the $100,000 payment was actually a loan and not, as is stated in the agreements, a down payment on the purchase price. Plaintiff, having executed and agreed to the terms of the contract, is conclusively bound thereby (*Pimpinello v Swift & Co.*, 253 NY 159, 162-163; *Humboldt Oil & Refining Co. v Jaybert Esso Serv. Sta.*, 30 AD2d 952). As was observed by the Court of Appeals in *Pimpinello v Swift & Co.* (253 NY, *supra*, at pp 162-163): "Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. (Wigmore on Evidence, § 2415.) If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him." The fact that plaintiff's counsel was not present at the meeting at which the agreement was executed is not dispositive. It appears, at the time, that plaintiff had been represented by at least one and possibly two attorneys. Thus, he asserts that (1) on April 8, 1981, discussions were held "in the presence of my then attorney" and (2) the date of closing was fixed "on the advise [*sic*] of my tax attorney". In any event, there is neither claim nor proof here of fraud or

overreaching by defendant (cf. *National Bank of North Amer. v Chu,* 47 NY2d 946, revg 64 AD2d 573). The contract of sale, clear and unambiguous in its essential terms, is enforceable. Proof to vary or modify the terms of the agreement is not admissible under the parol evidence rule, which excludes evidence of all prior or contemporaneous negotiations or agreements offered to contradict or modify the terms of a written agreement (*Marine Midland Bank-Southern v Thurlow,* 53 NY2d 381, 387; *Fogelson v Rackfay Constr. Co.,* 300 NY 334, 337-338; *Mitchill v Lath,* 247 NY 377, 379-380; see, generally, Richardson, Evidence [10th ed], §§ 601-634). Under the circumstances of this case, the parol evidence rule renders inadmissible the proof purportedly relied upon by plaintiff, clearly at variance with all the express terms of the three agreements, to establish the claim that the $100,000 payment actually constituted a loan and not a down payment toward the purchase price. The claim conflicts with so much of the agreement as precludes any oral modification or change and, in addition, contradicts paragraph 16, which merged in the agreement "[a]ll representations, understandings and agreements had between the parties with respect to the subject matter of this agreement". The contract, as agreed upon by the parties, "fully and completely expresses their agreement." Accordingly, the parol evidence, sought to be relied upon to vary or modify the terms of the agreement, may not be offered. Inasmuch as no proof has been adduced to refute the assertion that plaintiff defaulted in failing to proceed to closing the agreement entitled the seller to retain the deposit as liquidated damages. Accordingly, the order, Supreme Court, New York County (H. Schwartz, J.), entered August 6, 1982, which denied defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, the motion granted, the complaint dismissed and judgment entered on the counterclaim declaring that defendant is entitled to retain the down payment by reason of plaintiff's breach in failing to close title.