■ In the Matter of 50 PLAZA COMPANY, Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Appellant. — In a proceeding pursuant to CPLR article 78, *inter alia,* to review an

expulsion order of the New York City Conciliation and Appeals Board (CAB), dated April 5, 1982, which terminated petitioner's membership in the Rent Stabilization Association, the appeal is from a judgment of the Supreme Court, Kings County (Held, J.), dated February 28, 1983, which (1) declared the expulsion order null and void, (2) vacated petitioner's default in failing to respond to the CAB proceeding and granted petitioner permission to interpose an answer to the rent overcharge complaint and to submit appropriate documentation, and (3) remitted the matter to the CAB to determine the merits of the rent overcharge complaint based on a consideration of "all the facts and circumstances as submitted to [the] court".

Judgment modified, as a matter of discretion, by deleting so much of the third decretal paragraph as vacated petitioner's default. As so modified, judgment affirmed, without costs or disbursements, and the matter is remitted to the CAB for a hearing and determination, *de novo,* as to whether petitioner's failure to respond to the CAB's notices and its failure to fully comply with the order dated June 18, 1981, are excusable, and, if excusable, whether the rental charged by the owner for apartment 9C was in violation of the applicable rent increase guidelines; the CAB is also to determine *de novo* the appropriate penalty, if any.

A tenant in a building owned by 50 Plaza Company, a partnership, filed a complaint of rent overcharge with the CAB on May 4, 1981. The tenant alleged that he had taken occupancy of apartment 9C pursuant to a two-year lease, commencing September 1, 1980 and expiring September 1, 1982, at a monthly rental of $450. The tenant claimed that 50 Plaza Company had not complied with his request to be shown the prior leases to the apartment, in violation of the owner's obligation under the Rent Stabilization Law. The tenant submitted with his complaint a copy of his vacancy lease which did not contain a lease rider setting forth the rental history of the apartment and the tenant's right to examine prior leases as required by section 42A of the Rent Stabilization Law and Code. The CAB mailed to the owner's designated managing agent, one Barry Eden, notice of the commencement of a CAB proceeding and a copy of the tenant's complaint. A subsequent "final" notice advised 50 Plaza of its right to file an answer and that it was required to supply the CAB with copies of all prior leases documenting the rental history of the subject apartment since May 31, 1968. The notice reminded the owner that section 42A of the code required it to maintain and submit the requested documents and failure to do so would be considered a default. The owner did not interpose an

answer to the tenant's complaint nor did it produce the requested documents. By opinion and order, dated June 18, 1981, the CAB noted the owner's default and directed 50 Plaza (1) to produce, within 10 days, the requested documents, (2) to provide the tenant with a lease rider in compliance with section 42A of the code and to include such riders in all vacancy and renewal leases in the building executed after the effective date of said order, and (3) to submit a written statement of compliance with said order within 10 days of the service thereof. The CAB cautioned the owner that "[d]isregard of this opinion will result in the owner's expulsion as a member in good standing from the Rent Stabilization Association with regard to the entire building without further notice and such other discipline as the Board deems appropriate." The owner did not communicate in any manner with the CAB. On July 17, 1981, the CAB served upon the owner, by certified mail, a letter requesting 50 Plaza to contact the CAB immediately regarding its failure to comply with the prior order. A copy of the order was attached to the letter. The return receipt was signed by one of the general partners.

On August 3, 1981, one of the general partners submitted to the CAB an owner's statement of compliance with regard to the CAB's prior order, noting the name of the previous tenant of the subject apartment and the rents he paid. No documentary evidence in support of the rental allegation was proffered nor was there any proof of compliance with the other directives in the CAB's order, dated June 18, 1981.

On September 24, 1981, the tenant submitted a statement of noncompliance. The tenant alleged that he had spoken with the previous tenant. Although the previous tenant had discarded his old leases for the subject apartment, he recalled a rental substantially lower than the rental quoted by the owner.

Approximately eight months after the owner's last communication with the CAB and without further notice to the owner, the CAB rendered an expulsion order, dated April 5, 1982, terminating 50 Plaza's membership in the Rent Stabilization Association as to the entire building for failure to comply with its earlier order. Thereafter, 50 Plaza requested the CAB to reconsider its determination. The request was denied. The owner then commenced this CPLR article 78 proceeding to review and set aside the expulsion order.

According to Michael Satran, a general partner of 50 Plaza, the partnership never received any of the CAB's notices that a proceeding had been commenced because the notices were addressed to its former managing agent, who had moved to Florida

prior to commencement of the CAB's proceeding. The only correspondence received from the CAB was the letter, dated July 17, 1981, which was served by certified mail. Upon receipt of this letter, Satran submitted to the CAB the only data he was able to ascertain from the minimal records at his disposal. He was unable to locate the documents requested by the CAB and the only partner, a school teacher, who had been engaged in the process of obtaining the partnership's leases and rental records from the former agent was away on an extended summer vacation. Satran believed that the CAB would notify him if the data he supplied was insufficient. In that event, the requested documents could be furnished as his partner would have returned from vacation. When he received no further communication from the CAB, Satran erroneously assumed that his reply complied with the CAB's previous order.

Accepting, without a hearing, Satran's explanation for 50 Plaza's failure to respond to the CAB proceeding and to comply with the order dated June 18, 1981, Special Term *inter alia,* vacated the expulsion order and excused the owner's defaults. The matter was remitted to the CAB to determine the merits of the tenant's rent overcharge complaint and 50 Plaza was granted permission to interpose an answer and submit documentation of the apartment's rental history.

It is well established that a court may remit an administrative determination to a board for further proceeding, including reconsideration (*Matter of Clearview Gardens First Corp. v Foley,* 11 AD2d 1047, 1048). Satran's affidavit, which alleged facts that negate an intentional or willful disregard of the CAB's directives, was not part of the administrative record. The affidavit sufficed to raise a question of fact as to whether 50 Plaza's failure to respond to the CAB's notice and to fully comply with the opinion and order, dated June 18, 1981, are excusable. When confronted with this factual issue, Special Term erred in vacating 50 Plaza's defaults. Since factual issues are to be initially determined by the administrative agency (*Matter of Oriental Blvd. Co. v New York City Conciliation & Appeals Bd.,* 92 AD2d 470, affd 60 NY2d 633; *Fresh Meadows Assoc. v New York Conciliation & Appeals Bd.,* 88 Misc 2d 1003, affd 55 AD2d 559, affd 42 NY2d 925), Special Term should have remitted the issue of 50 Plaza's noncompliance with the order dated June 18, 1981 to the CAB for reconsideration. Accordingly, as a matter of discretion, we remit the matter to the CAB for a hearing and determination, *de novo,* as to whether 50 Plaza's failure to respond to the CAB's notices and its failure to fully comply with the order dated June 18, 1981, are excusable; and, if excusable,

whether the rental charged by 50 Plaza for apartment 9C was in violation of the applicable rent increase guidelines. The CAB is also to determine, *de novo,* the appropriate penalty, if any. At the hearing, 50 Plaza Company is granted permission to submit proof in support of its explanation for the default, documentary evidence of the rental history of apartment 9C, lease riders in compliance with section 42A of the code, and such other and further proof as it may be so advised. Mangano, J. P., Gibbons, Thompson and Rubin, JJ., concur.