Matter of Avery v New York State Div. of Hous. & Community Renewal (2004 NY Slip Op 50287(U))

[*1]

Matter of Avery v New York State Div. of Hous. & Community Renewal

2004 NY Slip Op 50287(U)

Decided on April 14, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 14, 2004

Supreme Court, Kings County
Matter of Gloria Avery, et. al., Petitioners,
against
NYS Division of Housing & Community Renewal, Respondent University Towers Associates, Proposed Intervener.
Index No. 2237/03

Yvonne Lewis, J.
The Petitioners herein (Gloria Avery, et. al. and Patsy Chen, et. al.) seek, by way of Article 78 relief, to set aside what they classify as the 11/19/02 Division of Housing and Community Renewals's (DHCR) "arbitrary and capricious revocation of the Rent Administrator's (DRA's) Orders (respectively, Docket No. BI2102100M & HA210003RP/BI2102090M) denying the building owner's request for . . .an MCI (major capital improvement) rent increase adjustment of $9.10 per room per month, effective March 1, 1990." The Petitioners, who are rent stabilized tenants of two of three premises, collectively known as University Towers, and individually located at 191 & 175 Willoughby Street, Brooklyn, NY, assert that by reversing the DRA's rent increase denials, DHCR has awarded "rent increases for improvements for which the owner has already received increases under the HUD program, and is [thereby] allowing the owner to 'double dip'." According to said Petitioners, they have been especially aggrieved for the following reasons, 1. DHCR had set the initial legal rent (ILR) for each apartment on the basis of the rents in effect in September, 1987 when the property was under federal HUD preemption. Thereafter rent increases were allowed for "work performed and expenses incurred" during the prior period of federal preemption; 2. DHCR failed to take into consideration the fact that since the work was not part of an overall project, it did not qualify for an MCI. In addition, the work was inadequate: to wit, windows were never completely installed and did not function properly; the owner failed to maintain services and perform necessary repairs, which resulted in findings of reductions in service; an increase was permitted for a new intercom system, when in fact the intercom system was removed and the service discontinued to some tenants and intruded into some tenant's personal telephone calls; and DHCR allowed for MCI increases in instances where the useful life of various systems were not exceeded.
The NYS Division of Housing & Community Renewal (DHCR) and the University Towers Associates [UTA], by their attorneys, responded to the foregoing by requesting a dismissal of the Petitioners' application herein on two grounds. 1. The Division's Commissioner issued a final order on September 8, 2003, which post-dated the petitioners' current application, and gave the petitioners 60 days therefrom to file an amended petition with this Court which they failed to do. Accordingly, an amended petition cannot now be timely interposed. Hence, this matter should be dismissed pursuant to CPLR 3211(a) 2; and, 2. Petitioners failed to state a valid [*2]cause of action since the Commissioner's final order is rational and based on the evidence of record. Therefore, this matter should be dismissed pursuant to CPLT 3211 (a) 7.
DHCR, joined by UTA, also argued that 1. "the work in question was properly found to qualify as a major capital improvement for which an appropriate rent increase was granted; 2. "the
tenants' complaint regarding the owner's provision of adequate services in the building had not been substantiated as there was an absence of any building-wide rent reduction orders at the time of the issuance of the final order." [In any event,] ". . .the existence of a service order for an individual apartment does not preclude the issuance of an MCI order. . .the owner is [simply] barred from collecting the rent increase until the rent restoration order is issued for the apartment; 3. "The windows, boiler and intercom were operable. [Hence,] if there was a finding of a lack of service, this was followed by a subsequent order which found that the service had been restored." Also, it was determined that the useful life of the replaced items had been exceeded.
In addition, DHCR and UTA set forth that the regulatory systems which permit an owner to apply for a permanent building-wide rent increase based upon the completion of a qualifying MCI are RCL [Rent Control Law], Section 26-405 (g)(1)(g); RER [Rent and Eviction Regulations], Section 2202.4( c ), and RSL [Rent Stabilization Law] Section 26-511 ( c (6) (b)); and RSC, [Rent Stabilization Code] Section 2522.4 (a) (2)(i), which basically require that the improvement be building-wide, depreciable under the Internal Revenue Code, other than for ordinary repairs, pursuant to a plan, for a specified amount of time, for the operation, preservation and maintenance of the structure, benefit all the tenants, and that items being replaced meet the requirements of a useful life schedule; i.e., have expired their useful life, except if waived by DHCR.
Furthermore, DHCR and UTA asserted that the Petition for Administrative Review (PAR; respectively Docket No. IH210044R0 & IH210045RO) which the mentioned tenants seek to reverse clearly determined ". . .that during the period of HUD preemption the owner made
expenditures for the claimed installations; [to wit, the new boilers, windows, intercom, roof, and engineering work,] and that such information would have been available for HUD review. However, DHCR records reveal that in an almost identical case. . .the Supreme Court, Kings County. . .rejected this rationale for denying MCI increases, holding that: '. . .DHCR improperly based its determination on the fact that petitioner received rent increases from HUD since, in actuality, there is nothing in the administrative record to indicate that such increases already included the cost of the improvements. Indeed, neither the Rent Stabilization Law, nor the Rent Stabilization Code prohibit an owner from applying for a rent increase based upon an MCI solely paid for by the owner for premises where rentals were previously regulated by the federal government.'" This ruling, DHCR and UTA noted, was made in connection with the remaining University Towers Building, located at 122 Ashland Place, Brooklyn, NY (Towers Management v. DHCR, Index No. 192862/92), and therefore should serve as res judica in the matters sub judice.
On or about December 11, 2003, Paul B. Dalnoky, Esq., submitted a new Article 78 petition on behalf of all the named Petitioners seeking a reversal of the DHCR's September 8, [*3]2003 final determination on the grounds that "the MCI work was performed on a piecemeal fashion over an extensive period of time without any plan, and merely amounted to repairs. Work was sporadic and, in many instances, never completed. Since the work was not part of an overall project, it did not qualify for an MCI. . . .the owner failed to maintain services and perform necessary repairs at the premises, which resulted in findings of reductions in service. . . .rent reductions have been issued. . .DHCR erred in granting MCI increases where the owner obtained J-51 tax benefits for the same installations. . . .the owner failed to document each of the
installations was performed to systems that had exceeded their useful life"and DHCR did not re-inspect the premises to verify conditions prior to issuance of the said final order. In response to the argument that the amended petition was not timely interposed, attorney Dalnoky points to the fact that it was not rejected by either respondent when submitted and did not prejudice any substantial right of either party. With regards to a dismissal for the failure to state a cause of action is concerned, counsel stresses that petitioner's meritoriously argue whether the MCI granted to the landlord was federally pre-empted, and points to the Acting Deputy commissioner's statement to the effect that ". . .any HUD restructuring of rents covering the same capital improvements as are included in the instant application for a rent increase would bar authorization by the DHCR for the additional increase. . . .Therefore, the Commissioner finds that this matter should be remanded to obtain determinative evidence." As to a claim of res judicata, counsel notes that the finding with regards to 122 Ashland Place, Brooklyn, NY (Towers Management v. DHCR, Index No. 192862/92) was building specific and merely remanded that matter for a de novo determination upon a finding that DHCR improperly found that petitioner received rent increases from HUD since ". . .there is nothing in the administrative record to indicate that such increases already included the cost of the improvements." Accordingly, there is nothing therein binding on the parties herein.
DHCR, as does UTA, maintains that the petitioners' ". . .failure to amend within 60 days [and/or within this Court's extended deadline] is a jurisdictional defect rendering the Court without jurisdiction to accept the late petition." (citing, Mott v. DHCR, 160 AD2d 803, 533 NYS2d 84). In addition, DHCR and UTA assert that the issues of federal preemption, the similarity of
improvements, and time frames thereof indicate a similarity of issues between these tenants and the 122 Ashland Place ones that present no significant factual or legal differences between them such that the Supreme Court's decision in Towers Management should not be binding on the tenants of all three buildings.
Petitioners, by their attorney, adhere to the arguments that 1. ". . .federal preemption bars the increases sought unless it can be shown that increases were not made during the period of federal regulation;" and, 2. acceptance of the amended petition was a waiver of any lateness in its submission (CPLR 2101 (f)).
The September 8, 2003 final order herein concerned determined that the work performed on the subject premises qualified as major capital improvements for which rent increases were granted on proven costs; and, that the petitioners had not rebutted the foregoing by any preponderance of evidence. The rationale for the Board's determination was as follows, 1. The [*4]window installation occurred from July 11, 1985 to October 1, 1985 and replaced windows that were over twenty-five years old; i.e., had outlived their useful lives; 2. The failure to maintain services claim was not borne out as a December 30, 1991 order revoked the building-wide rent reduction order that had been issued June 8, 1990 for 91 of the tenants (Dkt. # CI230028B); 3. The J-51 tax benefit obtained by the owner is irrelevant. In 1988, Public Health Law 41 made offset of Rent stabilized tenants applicable to improvements commenced after June 28, 1988, and the law did not have retroactive effect; 4. Inspections by the Rent Administrator, incident to tenant complaints, revealed that the intercom system and boiler were operable, and that the heat and hot water systems were adequate; 5. With regards to the complaints related to the MCI application, services were found to be maintained, or there was a finding that services had been restored where a lack of services had existed; and, 6. Policy Statement 90-8 established that where a DHCR order finds a failure to maintain services in individual apartments and MCI rent increases are approved, the MCI increase will apply to the entire building; however, until a restoration order is issued for individual apartments, the owner is barred from collecting any prospective increase and any retroactive increase is forfeited during the period that the rent reduction is in effect.
 To this Court any discussion with regards to the timeliness of the petitioners' submissions herein is unwarranted inasmuch as the petitioners were without counsel beyond the deadlines herein concerned, and as pro-se litigants they should not be held to strict pleading requirements.
Additionally, inasmuch as the November 19, 2002 order was reconsidered by the board and resulted in the September 8, 2003 final order, this Court sees no need to consider the merits of the former order as initially requested by the petitioners.
According to Rent Stabilization Code, 9 NYCRR, part 2522.4(a)(10), "the DHCR shall not grant an application. . .for an increase for any improvement. . .to the extent that the cost of such improvement is paid for by an owner with funds received pursuant to a grant from any governmental agency or entity. A low interest rate or subsidy shall not be considered a grant for the purposes of this paragraph. Nothing in this paragraph shall prevent an owner from applying for, and the DHCR from granting, an increase for such improvement to the extent that the cost thereof is otherwise paid for by an owner." Rent Stabilization Code, 9 NYCRR, part 2522.4(a) (13) provides that "the DHCR shall not grant an owner's application for a rental adjustment. . .in
whole or in part, if it is determined by the DHCR prior to the granting of approval to collect such
adjustment that the owner is not maintaining all required services, or that there are current immediately hazardous violations of any municipal, county, State or Federal law which relate to the maintenance of such services. However, as determined by the DHCR, such application may be granted upon condition that such services will be restored within a reasonable time, and certain tenant-caused violations may be excepted."
It is clear that "[a] court may remit an administrative determination to a board for further proceeding including reconsideration." (See Matter of 50 Plaza Co. v. New York City Conciliation & Appeals Board, 104 AD2d 886). However, "it is well settled that the Court's power to review an administrative action is limited to whether the determination was warranted in the record, has a reasonable basis in law and is neither arbitrary nor capricious." (See Matter of [*5]Pell v. Board of Education, 34 NY2d 222, 356 NYS2d 833; Matter of Colton v. Berman, 21 NY2d 322, 287 NYS2d 647). It is equally well settled that 1. "it is for the DHCR to determine what constitutes a required service and whether that service has been maintained." (See Matter of Sherman v. Commissioner, New York State Div. of Housing. & Community Renewal, 210 AD2d 486; Matter of Rubin v. Eimicke, 150 AD2d 697; Matter of Oriental Blvd. Co., v. New York City Conciliation & Appeals Board, 60 NY2d 633, 92 AD2d 770; and, 2. "in making such a determination, the DHCR is entitled to rely upon the report of its inspectors." (See Matter of Howard-Carol Tenant's Assn. v. New York City Conciliation & Appeals Bd., 48 NY2d 768, 64 AD2d 546; Matter of Aguayo v. New York State Div. Housing & Community Renewal, 150 AD2d 565). 
On the basis of all of the foregoing, this Court finds that there was a rational basis for the
board's final order with regards to the owner's paid improvements herein concerned. There is no indication that the improvements were paid by or through any governmental subsidies. The tenants' complaints were addressed and no lack of services were detected. To the extent that any diminution in services had been uncovered, then any prospective rent increase would have been barred and any retroactive increase would have been forfeited during the period that a rent reduction would have been in effect. Accordingly, the petitioners' application to set aside the Division of Housing and Community Renewal's September 8, 2003 final order is denied.
This constitutes the decision and order of this Court.
 JSC
Decision Date: April 14, 2004