Stevens, J.
In separate article 78 proceedings each of the appellants seeks review of actions taken by the respective Appellate Divisions in matters affecting the discipline of public employees. In recent years there has been inadequate understanding and undoubtedly some inconsistency in judicial review of administrative disciplinary determinations. For that reason it may be useful to restate some applicable principles.
The source of the jurisdiction of the Court of Appeals is the Constitution of the State of New York (N. Y. Const., art. VI, § .3), which with certain exceptions limits the court’s power to the review of questions of law. For the purposes of any judicial review of administrative action, the statutes also limit the scope of review in the Supreme Court or in this court to questions of law and. the extent of the sanction imposed (CPLR 7803).
In article 78 proceedings, “ the doctrine is well settled, that neither the Appellate Division nor the Court of Appeals has power to upset the determination of an administrative tribunal on a question of fact; * * * * the courts have no right to review the facts generally as to weight of evidence, beyond seeing to it that there is “ substantial evidence.” ’ ” (Cohen and Karger, Powers of the New York Court of Appeals, § 108, p. 460; 1 N. Y. Jur., Administrative Law, §§ 177,185; see Matter of Halloran v. Kirwan, 28 N Y 2d 689, 690 [dissenting opn. of Breitel, J.]). <s The approach is the same when the issue concerns the exercise of discretion by the administrative tri *231 bunal: The courts cannot interfere unless there is no rational basis for the exercise of discretion or the action complained of is ‘ arbitrary and capricious/ ” (Cohen and Karger, Powers of the New York Court of Appeals, pp. 460-461; see, also, 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.04 et seq.; 1 N. Y. Jur., Administrative Law, §§ 177,184; Matter of Colton v. Berman, 21 N Y 2d 322, 329).
The arbitrary or capricious test chiefly “ relates to whether a particular action should have been taken or is justified * * * and whether the administrative action is without foundation in fact.” (1 N. Y. Jur., Administrative Law, § 184, p. 609). Arbitrary action is without sound basis in reason and is generally taken without regard to the facts. In Matter of Colton v. Berman (supra, p. 329) this court (per Bbeitel, J.) said “ the proper test is whether there is a rational basis for the administrative orders, the review not being of determinations made after quasi-judicial hearings required by statute or law.” (Emphasis supplied.) Where, however, a hearing is held, the determination must be supported by substantial evidence (CPLR 7803, subd. 4); and where a determination is made and the person acting has not acted in excess of his jurisdiction, in violation of lawful procedure, arbitrarily, or in abuse of his discretionary power, including discretion as to the penalty imposed, the courts have no alternative but to confirm his determination (CPLR 7803, subd. 3; Matter of Procaccino v. Stewart, 25 N Y 2d 301; but see Matter of Picconi v. Lowery, 35 A D 2d 693, affd. 28 N Y 2d 962). Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard. (Matter of 125 Bar Corp. v. State Liq. Auth., 24 N Y 2d 174, 178; 1 N. Y. Jur, Administrative Law, § 184.)
In Matter of Weber v. Town of Cheektowaga (284 N. Y. 377, 380), this court, in reversing the order of the Appellate Division and reinstating the determination of the Town Board, dismissing petitioner for intoxication after an administrative disciplinary proceeding, said that “ the determination upon the facts is for the Town Board, and such determination will not be set aside by the courts unless it is unsupported by proof sufficient to satisfy a reasonable man, of all the facts necessary to be proved in order to authorize the determination ”. (See, also, Matter of Barsky v. Board of Regents, 305 N. Y. 89, affd. *232 347 U. S. 442; CPLR 7803, subd. 4.) “ It is well settled that a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion [citations omitted].” (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508, 520.)
The scope of CPLB 7803 in providing for judicial review of administrative sanctions was unclear initially. The question arose as to whether it called for a review as broad as that which the Appellate Division would have conducted of a determination at Special Term, or limited review to such abuses of discretion as were tantamount to a true question of law. The courts, however, laid the doubts to rest and interpreted the statute so as to limit judicial review to such abuses of discretion (Matter of Stolz v. Board of Regents, 4 A D 2d 361; Matter of Russell v. Stewart, 30 A D 2d 749, 750).
The statutes could have granted a broader or narrower power of review to the Supreme Court, including the Appellate Division. With respect to this court, however, the limitation is constitutional and the power of review limited to questions of law. As the statutes have been construed, however, the scope of review in this court and the Appellate Division would seem to be the same (Matter of Bovino v. Scott, 22 N Y 2d 214, 216).
Generally speaking, discretionary issues are not issues of law, but even in such cases it may be urged that the bounds of discretion were exceeded. “ [T]he inquiry is always pertinent whether in any particular case, discretion was abused, just as inquiry is always pertinent whether there is any evidence to sustain a finding of fact.” (Cohen and Karger, Powers of the Yew York Court of Appeals, § 159, p. 619).
“ Prior to the adoption of subdivision 5-a of section 1296 of the Civil Practice Act (L. 1955, ch. 661), the courts had no power to review the penalty, punishment or measure of discipline imposed by an administrative agency (Matter of Barsky v. Board of Regents, 305 N. Y. 89, affd. 374 U. S. 442).” (Matter of Stolz v. Board of Regents, 4 A D 2d 361, 363, supra.) Section 5-a permits the courts to review the measure of discipline imposed by administrative agencies, but, as noted by Mr. Justice Halpebh, “ this grant of power must be reasonably construed in the light of the settled principles governing the relationship *233 between the courts and administrative agencies. * * * We believe that, reasonably construed, the statute authorizes us to set aside a determination by an administrative agency, only if the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness.” (Matter of Stolz v. Board of Regents, supra., p. 364; see, also, Public Papers of Governor Harriman, Memorandum dated April 25, 1955, filed with Assembly Bill, Introductory No. 2834; N. Y. State Bar Assn. Memorandum No. 2834 in support of Bill 2834, N. Y. State Legis. Annual [1955], p. 32; Matter of Mitthauer v. Patterson, 8 N Y 2d 37.) The view expressed above still controls. (Matter of Tannenholz v. Waterfront Comm. of N. Y. Harbor, 36 A D 2d 930, affd. 30 N Y 2d 668 IJasen and Bbeitel, JJ., dissenting in opn. by Jasen, J.].) In Matter of Donohue v. New York State Police (19 N Y 2d 954) we held the sanction of dismissal of petitioner excessive as a matter of law and remanded the proceeding. “ CPLR 7803(3) reenacts subdivision 5-a of Civil Practice Act section 1296, authorizing courts to review the measure of discipline imposed by the respondent agency or officer.” (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.15; Matter of Walker v. Murphy, 15 N Y 2d 650, 651.)
Of course, as discussed earlier, whether there is evidence, in an administrative proceeding, to support a finding of guilt is a question of law which this court may review. But, where the finding of guilt is confirmed and punishment has been imposed, the test is whether such punishment is “ ‘ so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness ’.” (Matter of McDermott v. Murphy, 15 A D 2d 479, affd. 12 N Y 2d 780; Matter of Stolz v. Board of Regents, 4 A D 2d 361, supra).
Finally, in Matter of Bovino v. Scott (22 N Y 2d 214, 216, supra), this court (per Bebgan, J. with Soileppi, Bbeitel and Jasen, JJ., dissenting in opn. by Jasen, J.) flatly declared: “ Both the Appellate Division and this court are vested with power, pursuant to CPLR 7803 (subd. 3), to deal as a matter of law with the measure of discipline imposed on a subordinate civil service employee [citations omitted] ” (emphasissupplied).
In light of the history of the statutes and the afore-mentioned holdings, the sanctions to be imposed may be considered to be *234 either a legal matter or a discretionary matter, the latter subject to review only as a matter of law regarding the propriety of the discretion exercised. When an administrative abuse of discretion is determined to have occurred, it may be appropriate more often to remand the matter for the fixing of the sanction by the agency initially exercising the power unless in the circumstances peculiar to a particular case we deem the record sufficient to permit the reviewing court to assess the permissible measure of punishment warranted. (Cf. Matter of Dillard v. New York City Tr. Auth., 34 A D 2d 995, where the record was found insufficient to permit a determination on the question of the review of the Authority’s dismissal of petitioner for health reasons and the proceeding remanded. After a rehearing, the determination was confirmed, the Appellate Division concluding that the decision to dismiss “ was not arbitrary and capricious and was based upon substantial evidence ’ ’ Matter of Dillard v. New York City Tr. Auth., 39 A D 2d 759, 760.)
Of course, terminology like “shocking to one’s sense of fairness ” reflects a.purely subjective response to the situation presented and is hardly satisfactory. Yet its usage has persisted for many years and through many cases. Obviously, such language reflects difficulty in articulating an objective standard. But this is not unusual in the common-law process until, by the impact of sufficient instances, a more analytical and articulated standard evolves. The process must in any event be evolutionary. At this time, it may be ventured that a result is shocking to one’s sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals. Additional factors would be the prospect of deterrence of the individual or of others in like situations, and therefore a reasonable prospect of recurrence of derelictions by the individual or persons similarly employed. There is also the element that the sanctions reflect the standards of society to be applied to the offense involved. Thus, for a single illustrative contrast, habitual lateness or carelessness, resulting in substantial mone *235 tary loss, by a lesser employee, will not be as seriously treated as an offense as morally grave as larceny, bribery, sabotage, and the like, although only small sums of money may be involved.
There is no doubt that the reason for the enactment of the statute (CPLR 7803) was to make it possible, where warranted, to ameliorate harsh impositions of sanctions by administrative agencies. That purpose should be fulfilled by the courts not only as a matter of legislative intention, but also in order to accomplish what a sense of justice would dictate. Consideration of the length of employment of the employee, the probability that a dismissal may leave the employee without any alternative livelihood, his loss of retirement benefits, and the effect upon his innocent family, all play a role, but only in cases where there is absent grave moral turpitude and grave injury to the agency involved or to the public weal. But deliberate, planned, unmitigated larceny, or bribe taking, or demonstrated lack of qualification for the assigned job is not of that kind. Paramount too, in cases of sanctions for agencies like the police, is the principle that it is the agency and not the courts which, before the public, must justify the integrity and efficiency of their operations.
Attention is now directed to the separate proceedings listed above.
Matter of Pell v. Board of Education.
Charges were preferred against Pell that on seven occasions he absented himself from his teaching duties without permission, and thereafter falsely certified in writing that he was ill on such occasions and requested payment therefor. Earlier, Pell had requested and been refused permission to absent himself three days each month (November through May inclusive) in order to attend the New York University Senate of which he was a member.
After a full hearing, Pell was found guilty of: (1) insubordination: (2) conduct unbecoming a teacher; and (3) neglect of duty. He was dismissed from his position as a tenured teacher.
The Appellate Division, two Justices dissenting, modified the determination to strike the penalty of dismissal and provide in lieu thereof suspension without pay to the date of the order. The dissenting Justices voted to affirm the dismissal. Both *236 parties appealed. We are unanimous in our view that the cross appeal of Pell should be dismissed since he is not a party aggrieved by the modification of the Appellate Division.
The only question remaining is whether the modification with respect to punishment is warranted in light of the principles earlier discussed. It is concluded that the order of the Appellate Division should be reversed and the determination of the board reinstated.
Pell had been granted a year’s leave with full pay during the 1969-1970 school year which immediately preceded his requests here. Upon denial of his application for a total of 21 days’ leave, he had a right of appeal, which he elected not to exercise. In disregard of his professional obligations and of his superior’s decision, he absented himself from Ms teaching duties, thereby requiring replacements, falsely certified to being ill on those occasions, and was paid therefor. Such irresponsibility makes it impossible to conclude that the discipline imposed is shockingly disproportionate to the offense.
The judgment of the Appellate Division should be reversed and the determination of the board reinstated, without costs. .
Matter of Muldoon v. Mayor of Syracuse.
Following the preferral of charges, and after a full hearing, petitioner-respondent (petitioner) was found guilty of firing Ms revolver from a window of the Public Safety Building wMle on duty; of refusing a request tó submit to blood analysis (such refusal creating a presumption of intoxication und,er the applicable police department rules and regulations); of conduct unbecoming an officer; and, of failure to file a written report, as required of any officer who discharges a firearm in the per-, formance of duty. The acts for which petitioner was found guilty violated specific sections of the Rules and Regulations of the Police Department. Although petitioner testified that he had no recollection of the firing of his revolver, that fact was. proven by other testimony. There was substantial evidence in the record to support the findings, the hearing officer recommended dismissal, and thereafter, petitioner was discharged by respondent CMéf of Police. The Appellate Division modified to reduce the penalty to suspension until the date of entry-of its order.
*237 At first blush, the punishment imposed might seem excessive or unduly harsh; however, policemen hold a sensitive position in a community and have an obligation to aid in safeguarding and protecting the community which they serve. Armed as they are with dangerous or deadly weapons, the use of such a weapon without conscious recollection of such use, could pose a serious future threat of possible harm to civilians and others.
The Chief of Police as the person ultimately responsible for effective discipline must seek to protect both the community and the police force from dangers reasonably foreseen and risks which might become serious liabilities, or have grave consequences. If, in the exercise of his considered judgment, he imposes punishment, the exercise of his reasonable discretion should not be disturbed unless the punishment is so disproportionate to the offense as to be shocking to one’s sense of fairness (Matter of McDermott v. Murphy, 15 A D 2d 479, affd. 12 N Y 2d 780, supra).
It cannot be said as a matter of law that the Chief of Police abused his discretion by the action taken. The discretionary power exercised by the Appellate Division in modifying the penalty is not warranted by the record.
The judgment of the Appellate Division should be reversed and the determination of respondent Chief of Police reinstated, without costs. (See Matter of Bernardini v. Port of N. Y. Auth., 34 N Y 2d 750.)
Matter of Chilson v. Board of Education.
The order of the Appellate Division which reversed a judgment of the Supreme Court and reinstated the determination of respondents should be affirmed, with costs.
Petitioner, a Senior Construction Inspector with the Board of Education, was indicted, charged with grand larceny in the first degree, bribe receiving and receiving unlawful gratuities. On May 5, 1969, petitioner was suspended for conduct unbecoming his position and “ prejudicial to the good order, efficiency and discipline of the service.” The original specifications of misconduct served upon petitioner were taken from the indictment and at petitioner’s request, the disciplinary, proceeding was adjourned pending disposition of the criminal prosecution. On January 18, 1971, petitioner pleaded guilty *238 to the misdemeanor of receiving unlawful gratuities and on February 9,1971, at sentence, he was placed on probation. The specifications were amended* without objection, to reflect the plea and disposition.
At the hearing respondent’s counsel placed in evidence a certified copy of the indictment and a certified copy of the clerk’s minutes of the plea and disposition. Petitioner did not testify.
The plea of guilty and the sentence provide substantial evidence for the dismissal. Indeed, petitioner only contends that the penalty of dismissal constitutes excessive punishment.
Petitioner argues that with a record of 21 years of unblemished service, dismissal with its resultant loss of pension and retirement rights, is too drastic a penalty in light of the crime for which he stands convicted.
Petitioner, a public servant, was guilty of a breach of trust and a failure to faithfully and honestly perform the duties of his position. His position was a sensitive one and the misconduct serious. The question is not whether we might have imposed another or different penalty, but whether the agency charged with disciplinary responsibility reasonably acted within the scope of its powers. . The answer must be in the affirmative (see Matter of Walker v. Murphy, 15 N Y 2d 650; Matter of Boris v. Murphy, 19 N Y 2d 873). Pensions are not only compensation for services rendered, but they serve also as a reward for faithfulness to duty and honesty of performance.
Matter of Best v. Ronan
This is an appeal by respondent from a judgment of the Appellate Division which modified the determination of respondent by substituting for dismissal of the petitioner a suspension without pay for a period from the date of dismissal to six months from the date of the entry of the order of modification, roughly three and one-half years as of this appeal.
The charge of “ nickeling ”, or the mishandling of funds belonging to. the New York City Transit Authority (Authority), was established by the evidence, and the finding of guilt confirmed by the Appellate Division. Involved is a sum which by estimate of the Authority amounts to $1.26, allegedly appropriated over a period of 18 days by the use of coins given in change to passengers which, when deposited in the coin box, *239 registered a lesser sum than the actual value, thereby permitting . petitioner to appropriate the difference.
The single question is whether dismissal was reasonable and proper under the circumstances. Or, phrased differently, was the discretionary power of review of the Appellate Division properly exercised as a matter of law? In our view it was not.
The ingenuity of the scheme used indicates a carefully thought out plan which, reasonably, could well have been operative beyond the period of direct observation and detection. While the penalty and the resulting forfeiture of pension undoubtedly will result in hardship, it cannot be said as a matter of law that the sanction imposed by the Authority for theft was so harsh and excessive, so disproportionate to the offense as to be shocking to one’s conscience. Here there was a violation of a trust and a breach of duty which, if condoned and imitated, could wreak havoc with the entire system.
While heretofore the courts have, in some instances, considered prior good records of service and revoked a sentence of dismissal, substituting therefor a lesser penalty (see Matter of Mitthauer v. Patterson, 8 N Y 2d 37, supra), it is becoming increasingly clear that the nature of the misconduct charge when weighed with the action taken, where such action is reasonably within the permissible scope of the disciplining agency, must be accorded greater weight or recognition..
The judgment appealed from should be reversed and the determination of respondent Authority reinstated, without costs.
Matter of Abbott v. Phillips.
Abbott became employed as a police officer September 1,1968. He was dismissed September 15,1971, after having been found guilty of dereliction of his duties as a police officer.
On August 13, 1971, Abbott sustained certain injuries in an off-duty accident and remained on “ sick leave ” until September 4,1971, when he returned to work. "Upon his return, Abbott was charged with a violation of the rules and regulations of the department in that, while on sick leave, he, on two different dates, engaged in other employment as a delivery man for a private firm. Abbott received his pay as an officer for the time he was on sick leave. At times other than those specified in *240 the charges, Abbott while on sick leave, was not at home during the workday as required by departmental regulations.
After a finding of guilt on the charges, the Village Board of Trustees (appellants herein) were free to consider Abbott’s prior record in determining the punishment to be imposed. In June, 1969, he had pleaded guilty to misconduct charges in that he wrongfully discharged his revolver in a public place, while not in the line of duty, and failed to report the incident as required. However, the board, upon petitioner’s objection, erroneously excluded proof of the prior violation and discharged Abbott solely on the basis of the charges for which he was on trial. Both sides now agree this was error. The question is whether, in considering this offense alone, the board acted properly in the discharge of its responsibility, or whether the matter should be remanded to the board in order that they might , consider such prior violation with respect to the present punishment.
This article 78 proceeding was originally commenced in Supreme Court and transferred to the Appellate Division, which modified on the law the determination of the board by reducing the penalty to suspension for 20 days without pay.
In Matter of Mitthauer v. Patterson (8 N Y 2d 37, 42, supra) this court affirmed a modification by the Appellate Division, reducing a penalty of. dismissal to a six-month suspension. In so doing, the majority observed that “ this woman had over 20 years of service with a good record and would lose many valuable rights if dismissed. ’ ’ Assuming that was the basis for the affirmance, the factual picture in this case presents no such redeeming feature. In the cited case, the majority held that the court, in the course of its judicial inquiry as to the abuse of discretion, had complete power over the subject. (But see Little v. New York City Tr. Auth., 28 N Y 2d 719, where on a similar factual pattern, a totally different result was reached.)
A reduction of the penalty here, the determination of guilt having been confirmed, is not warranted. As a matter of law, the modification is not justified since it does not appear from, the record that the board abused its discretion in fixing the punishment,. -Unless an irrationality appears or the punishment shocks one’s conscience, sanctions imposed by an administrative agency should be upheld.
*241 The judgment should be reversed and the determination of the board reinstated, without costs to either party. (See Matter of Bernardini v. Port of N. Y. Auth., 34 N Y 2d 750, supra.)
It may be noted that the foregoing cases fall into one general classification as to the nature of the problems posed. However, it must always be kept in mind that the discussion above involved only disciplinary sanctions imposed internally in various administrative agencies and does not cover discipline imposed upon regulated persons or entities outside an administrative agency. That is not to say that the discussion may not be relevant to the issues raised in cases of the latter kind. Moreover, in every case there must be sensitive distinction among agencies based upon their responsibilities to the public. Thus, compare a police agency with a municipal electric utility. And, of course, always there must be a persisting discretion exercised to avoid unnecessary hardship to erring human beings not compelled by a supervening public interest. The determinations in these cases attempt to express that sensitivity.
In Matter of Pell: On respondent’s appeal: Judgment reversed, without costs, and determination of Board of Education reinstated.
On petitioner’s appeal: Appeal dismissed, without costs.
In Matter of Muldoon: Judgment reversed, without costs, and determination of respondents-appellants reinstated.
In Matter of CMlson: Order affirmed, with costs.
In Matter of Best: Judgment reversed, without costs, and determination of respondent-appellant reinstated.
In Matter of Abbott: Judgment reversed, without costs, and determination of respondents-appellants reinstated.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Rabin concur.