■ In the Matter of MICHAEL JAFFEE, Individually and on Behalf of CRAGSMOOR PRESERVATION ALLIANCE, Appellant, v RCI CORPORATION et al., Respondents.—Casey, J. Appeal from a judgment of the Supreme Court at Special Term (Williams, J.), entered September 24, 1984 in Ulster County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town of Wawarsing Planning Board approving the construction of a communications tower by respondent RCI Corporation.

In granting approval to respondent RCI Corporation (RCI) to build a 225-foot microwave telecommunications tower on Losees Hill in the Town of Wawarsing, Ulster County, respondent Town of Wawarsing Planning Board (Board) issued a "negative declaration", concluding that the proposed project would have no significant environmental impact. This determination followed RCI's submission of an environmental assessment form analyzing the proposed tower's environmental impact, an informal meeting between RCI and local residents to discuss the project, and a public hearing held by the Board on RCI's application. Petitioner contends that the Board erred in issuing a "negative declaration" and in failing to require the preparation of an environmental impact statement (EIS). Special Term rejected petitioner's contention, concluding that

the Board had complied with the requirements of the State Environmental Quality Review Act (ECL art 8) and that its determination was not arbitrary and capricious. We agree.

An EIS must be prepared "on any action * * * which may have a significant effect on the environment" (ECL 8-0109 [2]). Petitioner contends that Special Term erred in emphasizing the word "significant" rather than the word "may" in the statute. However, our review of Special Term's decision reveals that the court applied the proper standard for review of the Board's determination, that is, whether the agency identified relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis of its determination (see, Matter of Save the Pine Bush v Planning Bd., 96 AD2d 986, 987, appeal dismissed 61 NY2d 668).

Petitioner claims that the proposed project is a "type I" action and that the Board's determination must be annulled since it described the project as an unlisted action. Those actions listed in the regulations as type I "are considered more likely to require the preparation of an EIS than other actions * * * and therefore the procedural requirements for Type I actions * * * are more extensive than for those unlisted actions" (6 NYCRR 617.12 [a]). Special Term concluded that since the procedural requirements for type I actions under 6 NYCRR 617.6 were in fact complied with in this case, the Board's designation of the project as an unlisted action was, at most, harmless error.

Petitioner does not dispute that the procedural requirements for type I actions were followed; rather, it is argued that the distinction between type I and unlisted actions has a substantive impact on the decision-making process as well as a procedural impact. We disagree. It is clear from the language of the regulation that more extensive procedural requirements pertain to type I actions, but the same criteria must be considered in deciding whether either a type I action or an unlisted action may have a significant effect on the environment (6 NYCRR 617.11 [a]). As this court stated in Matter of Acton v Wallace (112 AD2d 581, 582), "[a]lthough a requirement for an EIS is more likely in type I actions than in other less environmentally significant cases, it is not required in all type I actions". Where, as here, the agency follows the appropriate procedural requirements, the issue distills to whether its conclusion that the proposed project would have no significant impact on the environment is a rational one which is supported by the record (see, Matter of Inland Vale Farm Co.

*v Stergianopoulos,* 65 NY2d 718, 719-720, distinguishing *Matter of United Petroleum Assn. v Williams,* 65 NY2d 708, *affg on opn below* 102 AD2d 491).

A review of the record establishes that the Board's determination was based upon the proper criteria *(see,* 6 NYCRR 617.11); the Board took the requisite "hard look" at the relevant areas of environmental concern and made a "reasoned elaboration" of its determination *(see, Matter of Save the Pine Bush v Planning Bd., supra,* p 987). Despite the petitioner's arguments that there is evidence in the record supporting conclusions contrary to the Board's findings, it cannot be said that the Board's determination is irrational and unsupported by the record.

We also reject petitioner's claim that the proposed construction of a 225-foot microwave telecommunications tower was in material conflict with the town's zoning ordinance. The ordinance permits "[r]adio, television and other transmission structures" in R/C-40 districts. The ordinance also contains a schedule prescribing certain maximum or minimum standards, including a maximum height of 2½ stories or 35 feet for R/C-40 districts. We agree with Special Term's conclusion that this height restriction applies to buildings and not to transmission structures.

At oral argument, petitioner advised the court that the zoning ordinance has been amended to eliminate transmission towers as permitted uses in the zoning district at issue. Petitioner claims that the Board's determination must be annulled based upon the general rule that courts are constrained to decide a case on the law as it exists at the time of the decision *(see, e.g., Matter of Demisay, Inc. v Petito,* 31 NY2d 896). This rule, however, is subject to certain limitations. RCI obtained the necessary approval pursuant to the law then in effect and lawfully completed construction of its transmission tower in accordance with that approval, thereby acquiring vested rights which were not affected by the subsequent amendment of the zoning ordinance *(see, Matter of Faymor Dev. Co. v Board of Stds. & Appeals,* 45 NY2d 560; *Matter of Pokoik v Silsdorf,* 40 NY2d 769; *Matter of Temkin v Karagheuzoff,* 34 NY2d 324). Having acquired vested rights, RCI is not required to show undue delay or other factors relevant to the doctrine of estoppel *(see, supra).* Nor can we accept petitioner's argument that RCI waived its vested rights by agreeing to remove the tower if the Board's determination were to be annulled. Assuming that RCI made such a concession, it clearly did not contemplate that a change in the

zoning ordinance would occur. In short, there is nothing in the record to establish that RCI agreed to remove its tower if and when a change in the zoning ordinance occurred, or that RCI otherwise waived the vested rights it acquired by lawfully completing construction.

Accordingly, the judgment dismissing the petition should be affirmed.

Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.