OPINION OF THE COURT
David B. Saxe, J.
Petitioners Green Bay Sanitation Corp. (Green Bay), O’Brien Sanitation Corp. (O’Brien), and D & D Carting Co., Inc. (D & D), all small companies in the business of commercial waste removal, petition this court, via three independent CPLR article 78 proceedings, to vacate the denial by respondent New York City Trade Waste Commission (the Commission) of their applications for waivers pursuant to Local Laws, 1996, No. 42 of the City of New York (Local Law 42). Each also requests preliminary injunctive relief barring the respondents from acting on the denials. The three petitions shall be addressed jointly. Temporary restraining orders are presently in effect.
I. STATUTORY SCHEME
On June 3,1996, after an intensive investigation of the entire trade waste removal industry, Local Law 42 was signed into law as a means to control the corrupting influence of organized crime upon the industry. The Legislature found that organized crime had dominated the industry for decades through a "cartel” of trade associations and individual carters, virtually eliminating any competition between carters, or freedom of choice on the part of the consumer. The respondent Commission was created under the new law to take over the function of licensing, registering and regulating trade waste carters from the City’s Department of Consumer Affairs (DCA).
Local Law 42 is aimed largely at the elimination of the private carting industry’s reliance on abusive contracting practices, both those perpetuated on paper, and the more physical methods for obtaining customer compliance generally attributed to organized crime. The law seeks to regulate or eliminate such onerous contract practices as the carter’s insistence on unreasonably long contract terms; the use of "evergreen clauses”, used to perpetuate contracts indefinitely by automatic renewal; the regular overcharging of customers; and the inclusion of excessive liquidated damages clauses.
In light of these practices, section 11 (iii) of Local Law 42 renders all existing carting contracts terminable on 30 days’ notice by either customer or carter, unless the carter obtains a *546 new license from the Commission, or applies for and receives a waiver of the 30-day termination clause, upon a showing that a waiver "would not be inconsistent with the purposes of this act.” For all practicable purposes, absent a waiver of the 30-day termination provision, private carters no longer have the right to set the term of their contracts, nor perpetuate those contracts through automatic renewal clauses.
Each of the three petitioners applied for, and was refused a waiver of the 30-day termination provision. Each claims, as a result, that it was wronged by the Commission’s arbitrary denial of its application, and that it will be irreparably harmed should the Commission notify its customers of the termination option. Although the reasons given by the Commission for the denials differ to some degree from one petitioner to another, all of the petitioners are in agreement that the Commission has granted waivers to several carters, whose past transgressions are said to at least equal those attributed to the petitioners, in a manner which is arbitrary and capricious, and in violation of the petitioners’ rights. Each petitioner decries the Commission’s failure to hold an evidentiary hearing prior to the denial of its application, and seeks a hearing pursuant to CPLR 7804 (h).
II. FACTUAL BACKGROUND
A. Green Bay
Green Bay describes itself as a typical "mom and pop” operation, founded more than 30 years ago by its sole shareholder and president, Enrico Casagrande. Green Bay’s application for a waiver was found by the Commission to be "inconsistent with the purposes of Local Law 42 because of the applicant’s questionable background and contracting practices”, to wit (and as set forth in the Commission’s decision):
"(1) the applicant improperly benefited as a member of an indicted trade association that enforced an organized-crime influenced, illegal customer-allocution scheme;
"(2) the applicant’s principal, Enrico Casagrande, actively participated in the affairs of an indicted trade association as a member on the Board of Directors during the very period that the trade association was engaging in the criminal conduct for which it now faces prosecution, and took no steps to prevent such corrupt activities;
"(3) the applicant’s contracts evidence the unequal bargaining power that Local Law 42 was intended to redress by using, as a standard contract feature, an 'evergreen clause’;
*547 "(4) the applicant’s contracts reflect the unequal bargaining power that Local Law 42 was intended to redress by including a dubious standard liquidated damages clause;
"(5) the applicant’s contracts evidence the unequal bargaining power that Local Law 42 was intended to redress by using, as a standard feature, a provision that absolves the applicant. from any and all liability, in violation of a DCA rule;
"(6) the applicant’s contracts reflect the unequal bargaining power Local Law 42 was intended to redress by charging the maximum rates permissible under law, and the applicant’s financial records reveal that it uniformly charged the maximum rates to its customers;
"(7) the applicant’s contracts contain a provision on prices that is materially false; and
"(8) the applicant has failed to meet its burden of demonstrating that 'a waiver would be consistent with the purposes’ of Local Law 42.”
B. O’Brien
O’Brien also characterizes itself as a small "mom and pop” operation, founded 30 years ago by its president and sole shareholder, Samuel Martino. In denying O’Brien’s application, the Commission cited, as set forth above in the case of Green Bay, and in much the same language, O’Brien’s use of "evergreen clauses”, onerous liquidated damages clauses, and contracts charging only the maximum rates permissible, as well as O’Brien’s membership in an indicted trade association.
In addition, O’Brien was cited for (1) failing to abide by administrative regulations; (2) failing to provide complete and accurate information in connection with the waiver application; (3) providing contracts which "on their face” appear to have been fraudulently induced; (4) overcharging many of its customers; (5) and failing to conduct waste stream surveys to determine the actual amount or refuse its customers generated over a representative period of time, as required by law. As with Green Bay, the Commission concludes that O’Brien has "failed to meet its burden of demonstrating that 'a waiver would be consistent with the purposes’ of Local Law 42.”
C. D & D Carting
D&D describes itself in much the same language as do Green Bay and O’Brien, with the difference that its president and sole shareholder, Anthony DiNardi, is said to have founded *548 the company 66 years ago. As with the other two petitioners, D & D is charged by the Commission with having benefited from its membership in an indicted trade association, utilized "evergreen clauses”, and with charging only the maximum permissible rates.
D & D is individually cited for (1) charging an excessive interest rate of 24% per annum for late payments; and (2) for its route purchase of Star Waste Paper Inc., which, because of the exorbitant amount paid for the route, "objectively confirms its knowledge of, and participation in the organized crime dominated cartel’s anti-competitive activities.” As in the case of Enrico Casagrande of Green Bay, Anthony DiNardi’s position as an officer on the Board of Directors of an indicted trade association, and his failure to take steps to prevent its corrupt activities, is raised as additional grounds for the denial. According to the Commission, D & D, like the other petitioners, failed to meet its burden to demonstrate its right to a waiver under Local Law 42.
III. ARGUMENTS
According to the Commission, a carter, upon application for a waiver under Local Law 42, bears the burden of establishing that granting the waiver would be consistent with either of the "legitimate and significant” legislative purposes which were recognized by Judge Pollack in Sanitation & Recycling Indus. v City of New York (928 F Supp 407 [SD NY 1996] [in which Local Law 42 was found to be constitutional], affd 107 F3d 985 [2d Cir 1997]). The two purposes, as characterized by the Commission, and reflected in the legislative findings, are (1) to eliminate corruption and organized crime influences in the industry, and (2) to eliminate abuses in the contracting processes that have solidified the control of the industry by an organized crime "cartel”. Local Law 42 § 11 provides, inter alia, "In determining in its discretion whether a waiver of the termination requirement would be consistent with the purposes of this act, the commission shall consider background information concerning the business and its principals and the full circumstances surrounding the negotiation or administration of such contracts, including but not limited to the form and content thereof.”
Before arriving at its final decision denying the waivers, the Commission served upon each petitioner its detailed recommendation that the application should be denied, with leave to respond. The recommendation recited both the historical *549 underpinnings of the statute and its purposes, and the individual reasons why denial of the application was recommended. The three responses served upon the Commission by the petitioners uniformly minimize the Commission’s references to the legislative findings as "irrelevant” to their own applications, stating that "none of the concerns expressed in the findings of fact, which brought about Local Law 42, apply to this applicant or its principals.”
The responses also downplay the import of petitioners’ membership, or participation as directors in the various indicted trade associations, and deny all participation in, or knowledge of, illegal activity on the part of the associations. The petitioners were especially incensed by the Commission’s references in the recommendation (and later, in its decision) to statements made by Browning Ferris International (BFI), during the legislative investigations. Despite its aid in the investigation of the carting industry, BFI is alleged by petitioners to be itself guilty of crimes, and hence, a suspect entity. Finally, the petitioners attempted, in conclusory fashion, to explain away, or excuse their own individual wrongdoings, or their reliance on contract terms which, they maintain, are not necessarily illegal or wrong, and which were, in any event, approved by the DCA. All of the petitioners demanded the right to a hearing in which to present their cases, although no effort was made to produce evidence in response to the Commission’s recommendation.
Petitioners reiterate these points in the present proceedings, again maintaining their constitutional right to evidentiary hearings. Further, the petitioners argue that the Commission has acted inconsistently, in that it has granted waivers to other companies who are allegedly "guilty” of the same wrongdoing attributed to petitioners. Petitioners name several companies which allegedly were also members of indicted trade associations, whose principals also sat on the associations’ Boards of Directors, and whose contracts contained the same terms which the Commission used against petitioners, who yet were granted waivers.
IV. DISCUSSION
The applicable law is simple enough. Decisions of administrative agencies are not to be disturbed absent a showing that the agency’s determination was arbitrary and capricious, or lacked a rational basis (Matter of Pell v Board of Educ., 34 NY2d 222, 230-231 [1974]). The court may not substitute its judgment for *550 that of the agency (supra, at 232), and must respect the interpretation given to any applicable statute by the agency charged with its enforcement (Matter of Fineway Supermarkets v State Liq. Auth., 48 NY2d 464, 468 [1979]).
Under these standards, it cannot be said that the determination of the Commission to deny waivers to the petitioners is either arbitrary or irrational. The grounds set forth in each denial are more than sufficient to establish that the waivers would be "inconsistent with the purposes of the statute.” In this regard, it should be noted that the legislative history of Local Law 42 is extremely pertinent to the determinations, even if the petitioners themselves were not cited for criminal acts as a result of the investigation.
Further, the petitioners’ conclusory and self-serving responses to the recommendation fall far short of proof of their assertions that they never participated in or profited from the illicit activities of the "cartel”, or of the trade associations in which they were members.
The court sees no inequity in the fact that other carters may have received waivers, even though they, too, belonged to indicted trade associations, or utilized coercive contract terms. The fact that other carters may also have participated in the questionable contractual practices attributed to petitioners does not render those practices acceptable, nor excuse the petitioners’ course of conduct. Regardless, each of the petitioners was also cited for acts or practices individual to that petitioner, which are clearly inimical to the purpose of Local Law 42, to which only conclusory denials were offered. The Commission maintains that investigation into the activities of the carters who were granted waivers despite their memberships in suspect trade associations, or evidence in their contracts of one-sided terms, found no evidence of the wrongful conduct and "cartel participation” with which the petitioners are charged. The Commission’s determination to consider the "totality” of the cited grounds was a rational one, and defeats any charge of inconsistency based on the granting of waivers to other carters.
Petitioners have failed to convince this court that they were, or are entitled to an evidentiary hearing. Petitioners failed to take advantage of the opportunity afforded them by the Commission to offer evidence disputing the Commission’s recommendations. Especially conspicuous is the failure of Green Bay and D & D to offer proof that their principals, as members of the indicted trade associations’ Boards of Directors "took steps *551 to prevent the association’s corrupt activities.” In light of the compelling evidence of the nature of these associations contained in the legislative record, petitioners’ conclusory assertion that they only utilized the associations as sources of information, and for collective bargaining purposes, and that their principals knew of no wrongdoing, is not credible. Certainly, the Commission’s refusal to give credence to these conclusory avowals of innocence was rationally based. There is no merit to any of the petitioners’ remaining arguments, either as presented to the Commission, or to this court.
v. CONCLUSION
The record establishes that the determinations of the Commission, denying waivers to the three petitioners here, was rationally based, and was not arbitrary or capricious, or inconsistent with other determinations of the agency. Consequently, the petitions are dismissed, and no injunctive relief is warranted.
Accordingly, it is ordered and adjudged that the petitions in Green Bay Sanitation Corp. v City of New York (101890/97), O’Brien Sanitation Corp. v City of New York (101891/97), and D&D Carting Co. v City of New York (101892/97) are each dismissed.