FRANK LOMANGINO & SONS, INC., Chelsea Sanitation Service, Inc., East End Sanitation Corp., J. Cafaro, Inc., M & M Sanitation Corp., C.T. Carting Corp. and Isabella City Carting Corp., Plaintiffs,

v.

CITY OF NEW YORK and Trade Waste Commission of the City of New York, Defendants.

No. CIV. A. CV–97–0429 (DGT).

United States District Court, E.D. New York.

Oct. 3, 1997.

**677**

Rosenman & Colin, New York City, NY, for Plaintiffs.

Paul A. Crotty, Corp. Counsel for the City of New York, New York City, NY, for Defendants.

**1.** The Commission replaced the Department of Consumer Affairs ("DCA") as overseer of the

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

### Background

This case arises out of New York City's effort to rid the City's commercial carting industry of "organized crime's corrupting influence." Local Law 42 of 1996, Section 1. To effectuate this aim, Local Law 42 created a new regulatory agency, the New York Trade Waste Commission ("Commission")[1] and established a new structure for licensing and overseeing commercial carters in order to loosen the mob-run cartel's grip on the industry. As an immediate remedy to years of anti-competitive contracting practices, Local Law 42 rendered all current contracts terminable at will by either the customer or the carter upon thirty days notice, unless the carter requested and the Commission granted a waiver of this thirty day termination requirement. *See* Local Law 42 § 11(iii). It should be noted that even if a carter receives such a waiver, no contract that was in effect prior to the effective date of the law (June 3, 1996) can extend beyond two years after the effective date of the law (June 3, 1998). *See* Local Law 42 § 11(i). This waiver provision expressly empowers the Commission to determine "in its discretion whether a waiver of the termination requirement would be consistent with the purposes of this act." Local Law 42 § 11(iii).

In order for the Commission to make such a determination, the waiver application requires, inter alia, information about a company's and its principals' histories of criminal and administrative violations, as well as a statement explaining why granting a "waiver would not be inconsistent with the purposes of Local Law 42." Documentary Record Vol. II, Exh. G., Application for Waiver. In making its decisions, the Commission may " 'consider background information' concerning the business, its principals and the full circumstances surrounding the contract's negotiation." *Sanitation and Recycling Indus., Inc. v. City of New York,* 107 F.3d 985, 991–92 (2d Cir.1997) (hereinafter *SRI* ) (quoting Local

carting industry.

Law 42 § 11(iii)) (upholding Local Law 42 on a facial challenge to its constitutionality).

At a public meeting on January 17, 1997, the Commission announced the granting of waivers to fifty-five carting companies. Three of these companies are "nationals," new to the New York City market, and the remaining 52 are local carting companies. *See* Documentary Record Vol. II, Exh. J, Tr. of Commission Mtg. dated 1/17/96 [sic] at 50–52.[2]

At the meeting, Chair Randy Mastro articulated the bases for denying waivers to other carters. According to Mastro, the Commission denied waivers where the applicant had a criminal history or pending criminal charges; a prominent role in an indicted trade association; a civil enforcement history for violations that resulted in findings, fines, sanctions or other remediation; customer complaints; evidence of direct participation in the cartel such as payoffs and route purchases; evidence that the carter submitted false or misleading information to the Commission; or a past history of administrative violations. *See id.* at 25–35.

### History of this Litigation

Plaintiffs here are seven commercial carters whose waiver applications were denied by the Commission. They moved by order to show cause for a temporary restraining order and preliminary injunction to prevent defendants from notifying their customers that their contracts would be terminable on thirty days written notice. Plaintiffs claimed that by denying their waivers the Commission violated the Equal Protection Clause, the Due Process Clause, the Contracts Clause, the Takings Clause, their associational rights under the First Amendment, and Article 78 of New York Civil Practice Law. Defendants moved for summary judgment. Relying on the *SRI* decision by the Court of Appeals for the Second Circuit, summary judgment was granted against all plaintiffs on their federal constitutional claims, although not on the state law Article 78 claim.

The Article 78 claim rested on plaintiffs' allegations that plaintiffs' applications had been denied, while similarly-situated applicants had received waivers. In order to determine whether there was any substance to this claim, in this court's view plaintiffs needed to have access to the files of those carters to whom waivers had been granted. This would have been an enormous burden on both the court and the Commission. Accordingly, with the approval of all parties, an experimental method was suggested by the court that would permit plaintiffs to view the applications of ten carters to whom waivers were granted. The names of the fifty-two local carters who had been granted waivers at the public hearing of the Commission were selected by lot to become a comparison group for purposes of the Article 78 review. After ensuring that none of the information contained in the files of the chosen ten carters jeopardized any pending criminal investigations against cartel members, these waiver submissions were furnished to plaintiffs.

The ten carters first selected to become part of the comparison group were: Amro Carting Corp. ("Amro"), Argento Rubbish Removal Corp. ("Argento"), Boro-wide Recycling Corp. ("Boro-wide"), Brown Waste Co. Inc. ("Brown"), Executive Carting Corp. ("Executive"), Meeker Avenue Space Carting Corp. ("Meeker"), Midland Carting Corp. ("Midland"), Mr. T Carting Corp. ("Mr. T"), United Sanitation Inc. ("United") and William Tedesco ("Tedesco"). *See* Ltr. to Ct. from Chad Vignola, Deputy Commissioner of the Trade Waste Commission dated 4/16/97. However, a series of vitriolic debates about the efficacy of the comparison group soon erupted.

First, plaintiffs discovered that although it had been publicly announced at the Commission meeting on January 17 that Meeker had been granted a waiver, in fact, Meeker's application had been denied previously. *See* Ltr. to Ct. from Gerald Walpin, Esq., Counsel for Plaintiffs, dated 5/1/97. The Commission responded that plaintiffs were correct and that Meeker had been denied a waiver,

---

2. This number was reduced to 51 after the removal of Meeker Carting Co., which had mistakenly been included on the list of carters who were granted waivers announced at the meeting. *See* discussion *infra.*

and had been included in the list of publicly announced waiver grantees as the result of a "clerical mistake."[3] *See* Vignola Supp. Decl. dated 5/6/97 ¶ 2.

Because Meeker had not received a waiver, a new carting company, Hollywood Carting Corp., was selected to be the substitute tenth carter in the comparison group. However, on May 15, 1997 Mr. Vignola wrote that "in light of recent allegations made by Mr. Walpin concerning Hollywood and its truthfulness on its waiver application and other information obtained by the Commission's staff, the waiver application of Hollywood (and its affiliated company, Silver Star Carting Corporation) is under reexamination." Ltr. to Ct. from Vignola dated 5/15/97. Thereafter, another substitute tenth carter was selected, Rotuno Bros. Inc. *See id.* Plaintiffs again took issue with this substitution, arguing that "[e]ssentially, what the Commission is doing is ejecting carters from the Comparison Group whenever we point out facts which make their continued presence in the Comparison Group probative of disparate treatment." Ltr. to Ct. from Walpin dated 5/19/97 at 2.[4]

Nonetheless, the comparison group experiment continued in spite of these criticisms, and on July 16, 1997 oral argument was heard on plaintiffs' Article 78 claims. Summary judgment was granted against plaintiffs Lomangino, Chelsea, East End, M & M, and C.T. Carting Corp. because the record revealed that the waiver applications of these carters showed significantly more serious infractions, both in number and in kind, than those carters in the comparison group. Thus, the Commission did not engage is disparate treatment by denying these waivers.

However, two plaintiffs, Isabella and Cafaro, submitted applications to the Commission that were significantly similar to those in the comparison group. In the case of Cafaro, the reasons stated by the Commission for denying the waiver application were: 1) membership in the Association of Trade Waste Removers of Greater New York ("GNYTWA"); 2) contracts that contained evergreen clauses, liquidated damages clauses and five-year terms and that charged the maximum allowable rate; 3) a violation in 1991 for overcharging (which was settled); and 4) a customer complaint of overcharging in 1996. *See* Documentary Record Vol. VI, Cafaro Administrative Record Exh. E. Waiver Application Denial at 13–20. Isabella's waiver application was denied because: 1) its principal was a Board member of the GNYTWA; 2) its contracts contained evergreen clauses, liquidated damages clauses and charged the maximum allowable rate; 3) many of the contracts for which waivers were sought were executed on one day; and 4) Isabella had been charged with customer register irregularities and overcharging in 1987 and customer register irregularities in 1991. *See* Documentary Record Vol. IX, Isabella Administrative Record Exh. E, Waiver Application Denial at 14–20. However, when plaintiffs' counsel reviewed the applications of the comparison group carters, they found

---

**3.** Mr. Vignola states that Meeker's application was denied but that the attorney who oversaw the file left the Commission within a week of the decision and failed to file the denial or place Meeker's name of the Commission's official waiver denial list. *See* Vignola Supp. Decl. dated 5/6/97 ¶ 3. At a later date, Mr. Vignola himself went through all of the files whose applications had not yet been decided to search for "indicia of cartel participation which would merit waiver denial." *Id.* ¶ 5. When he went through the file (which should not have been included since the waiver had already been denied), Mr. Vignola placed Meeker on the waiver list. *Id.* Not surprisingly, plaintiffs found that it was "frankly amazing" that such an incident could have occurred and that two Commission reviewers could have come to diametrically opposite conclusions about Meeker's file. Ltr. to Ct. from Walpin dated 5/8/97 at 1. The Commission responded that the material in the original file, on which basis the application had been denied, was not a part of the file reviewed by Mr. Vignola. *See* Ltr. to Ct. from Robin Binder, Esq., Counsel for Defendants, dated 5/12/97 at 2.

**4.** Additionally, plaintiffs had previously informed defendants that Morris Napolitano Sr., of Brown in the comparison group had been President of the Greater New York Waste Paper Association. *See* Walpin Reply Aff. dated 3/19/97 ¶ 5 attached to Plaintiffs' Counter Rule 3(g) Statement. The Commission responded that Napolitano did not furnish that information in his application for a waiver, but that the Commission would reopen the Brown file and investigate Napolitano's role in the association. *See* Vignola Reply Decl. dated 3/31/97 ¶ 16 n. 5; Vignola Supp. Reply Decl. dated 6/11/97 ¶ 10 & n. 3.

that many of them may have engaged in substantially the same behavior as Isabella and Cafaro. *See* Walpin Supp. Aff. dated 5/29/97 & Exhs.

It was determined that in order to ensure a factually-complete Article 78 inquiry, the Commission would provide Isabella and Cafaro with copies of the comparison group's Department of Consumer Affairs violation histories, which the Commission had referenced when determining whether to grant waivers. *See* Vignola Supp. Decl. dated 8/13/97 ¶ 9. The parties were then to submit briefs on plaintiffs' disparate treatment claim, contrasting the violation histories of Cafaro, Isabella and the comparison group, and also addressing the legality of denying Isabella waivers because its principal had been a director of the GNYTWA, an indicted trade waste organization, from 1989–93.[5]

The DCA violation histories revealed that Argento, one of the carters in the comparison group, had been fined $500 for overcharging a customer. According to Mr. Vignola:

> I did not determine that this was an overcharge violation when I reviewed DCA's database prior to the grant of a waiver to Argento. Accordingly, Argento was included in the group of carting companies which were granted waivers. Having now discovered this violation, the Commission has reopened Argento's waiver application

to consider whether the denial of a waiver would now be appropriate.

Vignola Supp. Decl. dated 8/13/97 ¶ 12 (footnote omitted). Mr. Vignola's explanation for the oversight of the overcharge violation is that "[t]he overcharge reference did not appear on the initial computer screen, which contains a summary of the violation history.... Rather, the overcharge reference appeared on a subsequent screen...." *Id.* at n. 3. Mr. Vignola also noted that even if the Commission or this Court finds that a carter similarly situated to plaintiffs was granted waivers, rather than granting waivers to plaintiffs, the Commission would reopen (and perhaps revoke) the comparison carter's waivers. With this in mind, Mr. Vignola suggests that "if the Court determines that the Cafaro determination should not be sustained, the proper remedy, respectfully, is to remand this matter to the Commission...." *Id.* at n. 4.

## Discussion

### (1)

■ When reviewing the decision of an administrative agency pursuant to Article 78, a court may not disturb the agency's decision absent a showing that the decision was arbitrary and capricious or lacked a rational basis. *See Matter of Pell v. Board of Educ.*, 34

---

5. Although the parties have briefed the question of the legality of denying Isabella waivers based on the fact that its principal was a board member of the GNYTWA, because the application was not denied on that ground solely, this Court need not address that question presently. In Isabella's waiver denial notification, a footnote to the heading describing participation in and board membership of an indicted trade association, explicitly states: "The Commission would deny the applicant's waiver application even if the applicant had not been a member that illicitly benefited from the anti-competitive activities of an indicted trade association." Documentary Record Vol. IX, Isabella Administrative Record Exh. E, Isabella Waiver Denial at 14 n. 7. Indeed, in *SRI*, the Court of Appeals for the Second Circuit held that in order "[t]o avoid constitutional invalidity, we ... construe the restrictions ... as meaning that a licensee may not be a member of a trade association where a licensee knows or should know that a person holding a position in such association has been convicted of being or is a member of an organized crime group." *SRI*, 107 F.3d at 999. Despite this language, several

courts have subsequently held that even mere participation in a trade association would be adequate grounds for denial of waivers. *See Fava et al. v. City of New York et al.*, CV–97–0179, 3/12/97 Tr. at 57–61; *Imperial Sanitation Corp. v. City of New York*, CV–97–0682, 1997 WL 375745 (E.D.N.Y. June 23, 1997) at *2–*3. One of these cases rested its conclusion on the argument that in light of the open, notorious nature of the cartel's operations, all members of the boards of directors of the carting associations had to be aware of the criminal activities being carried out using the associations as a cover. *Imperial Sanitation Corp.*, 1997 WL 375745 at *3. This may well be a fair inference to draw. Moreover, it would not be unreasonable in these circumstances to put the burden on the board member to establish his ignorance of that fact that "a person holding a position in such association has been convicted of being or is a member of an organized crime group." *SRI*, 107 F.3d at 999. However, it is unnecessary to make any findings or holdings because Isabella's waiver denial did not rest on this issue.

N.Y.2d 222, 230–31, 356 N.Y.S.2d 833, 313 N.E.2d 321 (N.Y.1974). However, New York's Article 78 has a well-developed and distinguished history as a leader in assuring meaningful review of administrative agency decisions. One of the principles that the New York Court of Appeals has enunciated within the folds of Article 78 is a robust form of equal protection, namely that administrative agencies must treat similarly situated applicants consistently. Thus, in *Matter of Charles A. Field Delivery Serv. Inc.*, 66 N.Y.2d 516, 520, 498 N.Y.S.2d 111, 488 N.E.2d 1223 (N.Y.1985) (Meyer, J.) (hereinafter *Field* ), the court wrote: "Absent ... an explanation, failure to conform to agency precedent will ... require reversal on the law as arbitrary, even though there is in the record substantial evidence to support the determination made."

In *Field,* the New York Court of Appeals found that the jurisprudential and policy rationales for demanding consistency in judicial decisions likewise applied to agency determinations: "to provide guidance for those governed by the determination made; to deal impartially with litigants; promote stability in the law; allow for efficient use of the adjudicatory process; and to maintain the appearance of justice." *Field* at 519, 498 N.Y.S.2d 111, 488 N.E.2d 1223 (citations omitted). Inconsistent determinations compromise these precepts and erode the credibility of agency decisionmaking. A meaningful and searching Article 78 review, therefore, requires inquiry into precedent to ensure that those similarly situated receive similar treatment.

Here, because the waiver evaluation process was not public, a method was fashioned for comparing the administrative files of plaintiffs with those of carters whose waiver applications the Commission had granted. Plaintiffs were furnished copies of the waiver applications of these ten carters. Unlike those instances where there was a denial of waivers, some 148 in total,[6] the Commission did not prepare written reports giving reasons for the granting of waivers; it merely announced the 55 carters at the meeting on January 17. Clearly the absence of written reports stating the reasons for granting waivers renders case comparison more difficult than it would have been had such documents existed. More importantly, it substantially increased the risk of unintentional disparate treatment. And, indeed, the complications that arose in the course of this limited inquiry bespeak the necessity for a more comprehensive comparative review of the Commission's decisions.

As a result of this comparison group analysis, the Commission has revisited the files of no fewer than four carters. The Commission reopened the Brown file to determine whether Morris Napolitano, Sr. was, in fact, a director of an indicted trade waste association. While the Commission was not aware of Mr. Napolitano's alleged directorship because he did not indicate on his submission that he held this position and it cannot be charged with inconsistency with respect to this submission, the end result from the plaintiffs' perspective is the same-disparate treatment. The Commission revisited the Meeker file in order to place on the record that Meeker had, in fact, been denied waivers despite the mistaken public announcement on January 11 that such waivers had been granted. *See* Vignola Supp. Decl. dated 5/6/97 ¶¶ 5–6 & n. 4. Even assuming that the Meeker snafu was attributable solely to a clerical error, this episode also indicates a need for a more complete review in order to inspire public and a court's confidence in the Commission's waiver determination process. Hollywood's file was reopened because plaintiff's lawyer made allegations "concerning Hollywood and its truthfulness on its waiver application and other information obtained by the Commission's staff." Ltr. to Ct. from Vignola dated 5/15/97. The particulars of these allegations are not part of the record, but the Commission's resultant reluctance to include Hollywood in the comparison group suggests that such inclusion would have worked to the perceived advantage of plaintiffs and disadvantage of defendants. Final-

---

**6.** According to the Commission, as of September 26, 1997, 214 waiver applications had been reviewed, 148 had been denied, 53 had been conditionally granted, 9 had been withdrawn and 4 applications were still pending.

ly, and frankly, most disturbingly, the Commission is now reopening the file of Argento after discovering upon reexamination of its DCA violation history a fine resulting from a complaint of customer overcharging. *See* Vignola Supp. Decl. dated 8/13/97 ¶ 12.

There is no question that the Commission was acting under serious time pressure and needed to review more than two hundred applications. With such a large number to be considered in a short period, it is not surprising that mistakes occurred. Nevertheless, this sequence of case reopenings—especially with respect to the Argento overcharge violation—indicates that the rule of *Field* has not been met and requires that these two plaintiffs' waiver applications be remanded to the Commission for reevaluation.[7]

### (2)

This decision, concededly, departs from the tack taken by most, if not all, of the other courts that have addressed this issue. In *Imperial Sanitation Corp. v. City of New York*, CV–97–0682, 1997 WL 375745 (E.D.N.Y. June 23, 1997), the court rejected plaintiff's selective enforcement claim, finding that the carter had not shown that "companies that have similar histories, affiliations and violations received waivers." *Id.* at *6. However, the court does not indicate what means, if any, it used to compare the plaintiff's application with those of carters whose applications had been granted. It is also noteworthy that in both *Imperial Sanitation Corp.* and *Fava et al. v. City of New York et al.*, CV–97–0179, the courts granted defendants' motions for summary judgment on Article 78 claims without mentioning *Field* or the principle of New York law promulgated therein. *See Imperial Sanitation Corp.*, 1997 WL 375745 at *7; *Fava* Tr. at 42–43. The fact that these courts appear not to have taken into account the *Field* doctrine erodes some of the persuasive value of their Article 78 holdings.

*D & D Carting Co., Inc. v. City of New York*, 172 Misc.2d 544, 658 N.Y.S.2d 825 (Sup.Ct.N.Y.Cty.1997) is, however, a directly-on-point state court Article 78 proceeding wherein petitioner carters challenged the denial of their waivers by the Commission. Petitioners argued:

> [T]he Commission has acted inconsistently, in that it has granted waivers to other companies who are allegedly 'guilty' of the same wrongdoing attributed to petitioners. Petitioners name several companies which allegedly were also members of indicted trade associations, whose principals also sat on the associations' Boards of Directors, and whose contracts contained the same terms which the Commission used against petitioners, who yet were granted waivers.

*Id.*, 658 N.Y.S.2d at 828. Without citing *Field*, the court dismissed the Article 78 claim, finding that "[t]he court sees no inequity in the fact that other carters may have received waivers, even though they, too, belonged to indicted trade associations, or utilized coercive contract terms." *Id.*, 658 N.Y.S.2d at 829. The court took the Commission at its word that in spite of these activities, there was no evidence of cartel participation by those carters who were granted waivers. *Id.* The court essentially insulated the Commission from meaningful Article 78 review by finding that "[t]he Commission's determination to consider the 'totality' of the cited grounds was a rational one, and defeats any charge of inconsistency based on the granting of waivers to other carters." *Id.* This type of conclusion seems to neatly gloss over the rule articulated in *Field* and seems contrary to well-developed New York law.

■ The *Field* rule applies, even when those whom it would protect are, to some

---

7. As noted in footnote 5, although the Commission relied in part on Isabella's principal's leadership role in GNYTWA, *see* Vignola Supp. Decl. dated 8/13/97 ¶ 2, it also stated in its written denial that it would have denied the waiver even had plaintiff not belonged to the trade association. *See* Documentary Record Vol. IX, Isabella Administrative Record Exh. E, Waiver Application Denial at 14 n. 7. Because it is unclear to what extent the Commission relied on this one factor, and in light of the Commission's reopening of the Brown file to assess its principal's leadership role, it is more than appropriate to remand Isabella to ensure adherence to the *Field* doctrine.

minds, less than savory members of society or have participated in a scheme that has cost the public dearly. This is so even though the benefit sought from the city is a privilege, not a right. In *Matter of Goldstein v. Brown*, 189 A.D.2d 649, 592 N.Y.S.2d 343 (1st Dep't 1993), petitioner, the publisher of Screw Magazine, filed an Article 78 proceeding challenging the police commissioner's determination denying his application for a license to carry a concealed weapon. After reiterating the *Field* doctrine, the court announced:

> We recognize that the burden of establishing 'proper cause' for the issuance of a carry permit is on the applicant. However in this case the respondent failed to provide any explanation regarding why it distinguished the petitioner from other applicants to whom carry permits were granted upon less specific proof of threats. Accordingly, we remand the matter to the respondent for a further explanation of its departure from prior practice.

*Id.* at 651, 592 N.Y.S.2d 343 (internal citation omitted). As in *Goldstein*, plaintiffs in this case do carry the burden of establishing why granting them waivers would not be inconsistent with the aims of Local Law 42. And also as in *Goldstein*, plaintiffs certainly are not entitled to receive such waivers. But these facts do not make the rule in New York that agency determinations must treat like parties alike an empty shibboleth. And, if nothing more, plaintiffs are entitled to a determination (even if it is a denial) that is consistent with the others rendered by the Commission.

In this connection, the *Imperial Sanitation Corp.* court opined that "[i]f the Commission found that [an]other company was in every respect similarly situated to [plaintiff], granting the waiver to that company would circumvent the goals of Local Law 42. The correct result would be to rescind that company's waiver." *Imperial Sanitation Corp.*, 1997 WL 375745 at n. 7. Mr. Vignola also expresses this sentiment in his submissions to this Court. *See, e.g.*, Vignola Supp. Decl. dated 8/13/97 at n. 4. This perhaps should be the result. And this may, in fact, be the best way to ensure that the Commission has accu-

rately and adequately realized the aims of Local Law 42. But the law—whether wisely or not—permits waivers, and plaintiffs are entitled a fair consideration of their applications.

Remanding plaintiffs' claims may well impose a burden on the Commission to engage in a scrupulous second look at all the carters to whom it granted waivers. And if the past (as manifest in the comparison group experiment) is prelude, this may well result in the reopening of more than a few cases. But this consequence should be embraced, not reviled. For it will benefit the public by ensuring that the mandates of Local Law 42 are achieved; it will strengthen the authority of the Commission by ensuring that its decisions are consistent; and it will protect the plaintiffs by ensuring that the determinations of their waiver applications are effectuated in a manner that comports with the equal treatment requirements of New York law.

### Conclusion

For the reasons stated herein, the Clerk of the Court is instructed to enter judgment in accordance with these instructions. With respect to plaintiffs Frank Lomangino & Sons, Inc., Chelsea Sanitation Service, Inc., East End Sanitation Corp., M & M Sanitation Corp. and C.T. Carting Corp., defendants' motion for summary judgment is granted in total. With respect to plaintiffs J. Cafaro, Inc. and Isabella City Carting Corp., defendants' motion for summary judgment is denied as to only the Article 78 claim and the case is remanded to the Commission for reconsideration.

SO ORDERED.