OPINION OF THE COURT
Lawrence Knipel, J.
Petitioner DeCostello Carting, Inc., by its president Frank DeCostello, Sr., moves for a judgment, pursuant to CPLR article 78, vacating and declaring null and void the decision *422 of respondent, the City of New York Business Integrity Commission, which denied its application for a license to operate a trade waste removal business and for a judgment directing respondent to issue petitioner said license.
Background and Procedural History
This case stems from the initial denial of petitioner’s August 1996 application to operate a trade waste removal business in New York City. That application, filed on August 28, 1996, sought a license under a new regulatory framework.[1] That framework retired petitioner’s previously issued Department of Consumer Affairs (DCA) license and only allowed its use until the outcome of the new license application.[2]
The Commission conducted an investigation of petitioner and its principal, Frank DeCostello, Sr. This investigation involved: (i) a review of confidential information obtained from the New York County District Attorney’s office which was based upon a proffer from Raymond Ramos, a convicted criminal, who had been employed by DeCostello, (ii) a search warrant affidavit, and (iii) the deposition of both Frank DeCostello, Sr. and his son, Frank DeCostello, Jr., whom petitioner employed as a driver/repairman.
The Commission’s executive staff, which also processed other voluminous applications,[3] thereafter drafted a recommendation to the Commission, dated June 7, 2002, which denied petitioner’s *423 license application. Petitioner’s counsel, who received the recommendation, subsequently submitted an affidavit from Frank DeCostello, Sr. and several exhibits in response to, and in support of, the application. After reviewing petitioner’s response to the recommendation, the Commission issued its decision, dated August 15, 2002, which denied the application.
An article 78 proceeding ensued in which the Honorable Mark Partnow, in a decision dated March 22, 2004, denied petitioner’s application to vacate and annul respondent’s decision denying its application for a trade waste removal license. Petitioner appealed the denial to the Appellate Division, Second Department. The Appellate Division, in its July 11, 2005 decision, reversed the denial of the article 78 petition and remanded the matter back to the Commission for a new determination of the application (Matter of DeCostello Carting, Inc. v Maldonado, 20 AD3d 477 [2005]). The Appellate Division based its reversal on the grounds that the Commission violated 17 RCNY 2-08 (a) by failing to grant petitioner an extension of time to file its response to the first recommendation before rendering its decision.* **[4] Pursuant to the Appellate Division’s order, petitioner’s application was remanded to the Commission. In a report dated September 13, 2005, entitled “Recommendation of the Staff,” the executive staff of the Commission again recommended the denial of petitioner’s application. Petitioner responded to the recommendation on September 27, 2005. On March 14, 2006, the Commission issued its final decision which denied petitioner’s applica *424 tion for a license to operate a trade waste removal business. Petitioner then instituted the instant article 78 proceeding.
Petitioner’s Position
Petitioner contends that the denial of the trade waste removal license violates its right to due process of law under the Fourteenth Amendment of the United States Constitution and article I, § 6 of the New York State Constitution because the Commission failed to afford petitioner an evidentiary hearing. Specifically, petitioner maintains that it has both a “property” and a “liberty” interest in continuing its trade waste removal business which may not be taken away without a hearing. Moreover, petitioner argues it was entitled to a hearing at which it could examine Raymond Ramos, a convicted felon, whose “proffer” was read by a police detective who confirmed its existence in a double hearsay affidavit.
Additionally, petitioner alleges that it has been stigmatized by both the publication and circulation of the Commission’s denial of the license application and the informing of petitioner’s customers of this fact. Finally, petitioner argues that DeCostello was not granted an opportunity to be deposed in connection with the Commission’s new determination of petitioner’s allegation. Accordingly, petitioner contends that the Commission’s decision to deny it a trade waste removal license was arbitrary and capricious and not supported by substantial evidence.
Respondents’ Position
Respondents assert that the decision denying petitioner’s application was proper, that sufficient evidence existed to support the determination and that petitioner’s due process rights were not violated. Respondents stress the Commission’s findings that Frank DeCostello, Sr. engaged in numerous racketeering and other illegal acts, including the hiring of Ramos, a convicted criminal, to intimidate, extort and physically harm others, including competitors. Moreover, the Commission found that DeCostello, Sr. failed to provide truthful information to the Commission regarding his relationship with Ramos and DeCostello Carting’s participation in the organized crime-controlled Greater New York Waste Paper Association (WPA). Such findings caused the Commission to conclude that petitioner lacks the requisite good character, honesty and integrity to obtain a trade waste removal license. Additionally, respondents state that the Commission was not required to again depose De *425 Costello, Sr. as a result of the Appellate Division’s decision and order remanding this matter.
Respondents further observe that the decision reflected that the Commission reviewed a proffer, i.e., an offer of information to qualify for a plea bargain, made by Ramos to the New York County District Attorney’s office. That proffer, they claim, described several incidents where petitioner collaborated with Ramos in racketeering and criminal activity. Such incidents allegedly included an offer to Ramos of $1,500 to assault someone whom he seriously injured with a kitchen knife, utilizing Ramos to slap a flower shop owner and collect money from him, directing Ramos to “beat up” some youths harassing a customer, using Ramos to warn a competitor to stay away from certain Brooklyn customers, receiving customers that Ramos “poached” from another carter, giving Ramos a badge issued by the Department of Sanitation, and setting up a meeting where two men offered Ramos $20,000 to kill someone.
The Commission’s decision, respondents observe, categorized the proffer as “confidential material” and an accompanying affidavit from Detective Andrew Valias of the New York City Police Department explained that “[t]he DA provided the Ramos Proffer[ ] to the Commission to assist the Commission in conducting investigations and issuing determinations with the understanding that the Commission would not make public the document, including as part of the record for the DeCostello license application.” This affidavit, furnished to petitioner’s counsel upon his request after the Commission staff issued its initial 21-page recommendation on June 7, 2002, stated that the recommendation is consistent with Ramos’ proffer in October 1995.
Respondents also refer to the decision’s reliance on Frank DeCostello, Sr.’s own deposition testimony. That testimony, the decision notes, acknowledged a close relationship with Ramos, including the hiring of him to do work for DeCostello Carting, and differed with the proffer only concerning Ramos’ criminality. The decision stresses that “Frank’s testimony confirmed that he had [a] relationship with the cartel criminals described by Ramos . . . [and] was consistent with regard to the context, i.e., the time and place, for criminal acts described by Ramos, including the stabbing incident.” The decision found Ramos’ proffer “especially persuasive in light of the conviction of the WPA, of which DeCostello was a member, and the convictions of many individuals named by Ramos, including Frank’s business and social acquaintances.”
*426 Respondents further emphasize that the testimony of both Frank DeCostello, Sr. and his son provided an independent basis for the decision. They mention the decision’s separate finding that Frank DeCostello, Sr. provided false testimony about both Ramos and the applicant’s participation in the WPA, an enforcer of the illegal customer allocation system. They also mention that the decision found Frank DeCostello, Jr.’s credibility “equally low,” especially in professing a lack of knowledge of the illegal cartel, despite having worked in the industry for many years.
Discussion
Pursuant to CPLR 7803 (3), the court’s review is limited to whether the Commission’s determination to deny petitioner a license was “made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.”
Administrative Code § 16-509 (a) permits respondent to refuse to grant a carting license where, after giving an applicant “notice and the opportunity to be heard,” it determines that such applicant “lacks good character, honesty and integrity.” Here, the evidence indicates that petitioner lacked the requisite good character. Petitioner’s dues-paying membership from 1991 through 1995 in the now WPA,[5] which was convicted in 1997 of cartel-related crimes,[6] its participation in an illegal customer allocation or property rights’ system and the discredited testimony of its principal, Frank DeCostello, Sr., given in investigative depositions regarding petitioner’s participation in the WPA, provide a basis for respondents’ denial of the license application.
Administrative Code § 16-509 (a) identifies several factors that the Commission may consider in assessing a license application, including “association with any member or associate of an organized crime group as identified by a federal, state or city law enforcement or investigative agency when the applicant knew or should have known of the organized crime associations of such person” (Administrative Code § 16-509 [a] [vi]). Therefore, Frank DeCostello, Sr.’s own testimony was a factor *427 that could, be (and was) considered by the Commission, as was his admittedly evasive testimony[7] which constituted a “failure by such applicant to provide truthful information in connection with the application” (Administrative Code § 16-509 [a] [i]).
The Appellate Division, First Department’s decision in Matter of DeCostole Carting v Business Integrity Commn. of City of N.Y. (2 AD3d 225 [2003]), which upheld another license denial, cited some of the same considerations present in this case. There too, “by participating in the mob-controlled waste cartel’s property rights system [and] failing to provide truthful information to the Commission . . . petitioner did not possess the requisite ‘character, honesty and integrity’ for licensure [and the Commission’s decision] vas not arbitrary and capricious” (id. at 225; see Administrative Code of City of NY § 16-509 [a]; Tocci Bros, v Trade Waste Commn. of City of N.Y., 251 AD2d 160 [1998], lv denied 92 NY2d 812 [1998]; Matter of Hollywood Carting Corp. v City of New York, 288 AD2d 71 [2001]).
In another First Department case, Matter of Sindone v City of New York (2 AD3d 125 [2003]), the Court highlighted circumstances similar to those present in the instant case in upholding a Commission decision barring a petitioner from serving as a principal or employee in the waste hauling industry. The Sin-done court (at 126) found that
“petitioner gave misleading or untruthful information in connection with, inter alia, his former membership in an indicted trade association . . . that petitioner was a member of a trade waste association indicted for antitrust violations, and . . . had been a principal in a trade waste business that did business with a known organized crime figure.”
Consequently, the court finds that the Commission herein acted rationally.[8]
In addition, respondents’ reliance on Ramos’ proffer detailing his collaboration with Frank DeCostello, Sr. in racketeering and other criminal activity further supports the license denial. The Appellate Division, First Department, upheld a determination similarly denying waste carting licenses in Matter of Hollywood *428 Carting Corp. v City of New York (288 AD2d 71 [2001]), where the evidence included a confidential informant’s affidavit. That Court explained that “ [although the statement of an anonymous informant set forth in one of the affidavits submitted by the Commission was not the only evidence of petitioners’ participation in the cartel, we note that such hearsay may be competent to support the type of administrative determination challenged here” (id. at 72 [citation omitted]).
The Appellate Division, Second Department, has likewise recognized this principle in its decision in Matter of BiCounty Brokerage S. Corp. v State of N.Y. Ins. Dept. (4 AD3d 470, 471 [2004]), where it held that
“[i]t is well settled that hearsay is admissible at an administrative hearing and ‘hearsay alone may constitute substantial evidence’ (Matter of Bullock v State of N.Y. Dept. of Social Servs., 248 AD2d 380, 382 [1998]; see Matter of Gray v Adduci, 73 NY2d 741 [1988]; Matter of Nieto v DeBuono, 231 AD2d 573 [1996]).”
Consequently, the Commission could utilize the proffer from Ramos, an identifiable source, and the affidavit of Detective Andrew Valias, who read the proffer, compared it with statements in the recommendation to the Commission and confirmed that the recommendation accurately restated the pertinent facts in the proffer. Such information adequately established the Ramos-DeCostello relationship, which Frank DeCostello, Sr. himself acknowledged, and provided additional support for respondents’ decision.
Based upon the foregoing reasons, the court finds that respondents’ decision to deny petitioner a trade waste removal license was not made in violation of lawful procedure, nor was it affected by an error of law, arbitrary and capricious, or an abuse of discretion.
Petitioner’s Constitutional Claims
Relevant case law also negates petitioner’s constitutional and due process arguments. The DeCostole Carting decision succinctly declared in this regard that:
“The discretionary refusal to grant the license was within the Commission’s statutory authority and petitioner had no property interest in licensure or a due process right to a hearing in connection therewith (see Matter of Daxor Corp. v State of N.Y. Dept. *429 of Health, 90 NY2d 89 [1997]; Matter of Hollywood Carting Corp. v City of New York, 288 AD2d 71 [2001]; Sanitation & Recycling Indus., Inc. v City of New York, 107 F3d 985 [1997])” (DeCostole at 225).
Additionally, the Sindone court held (at 126) that “[petitioner had no property right in being employed as a principal with a licensed carter; respondent Commission’s broad discretion to grant, deny or revoke a carter’s license is preclusive of any claim of entitlement by petitioner to employment within New York City’s trade waste industry” (citations omitted).[9]
The absence of a property interest and due process right and the use of the arbitrary and capricious standard of review means that this case and the other Commission decisions discussed above involve administrative action reviewable under CPLR 7803 (3),[10] not determinations from a quasi-judicial evidentiary hearing which trigger the substantial evidence standard under CPLR 7803 (4).* [11] Neither do they involve transfers otherwise mandated by CPLR 7804 (g) when the substantial evidence issue would apply.[12] In addition, because a property interest is absent, even dissemination of respondents’ written decision *430 would fail to establish a deprivation of due process (Matter of Scarpati-Reilly v Town of Huntington Bd. of Ethics & Fin. Disclosure, 300 AD2d 404, 405 [2002]). Here, petitioner has failed to even allege that respondents publicly disseminated the reasons for the license denial, which thus renders academic its argument regarding a denial of due process (Matter of Cardo v Murphy, 104 AD2d 884, 885 [1984]). Accordingly, petitioner’s application to vacate and annul respondents’ decision herein and to direct respondents to issue him a license is denied.

. Petitioner’s application resulted from the enactment of Local Law No. 42 (1996) of the City of New York. That law, codified as title 16-A of the Administrative Code of the City of New York, created the New York City Trade Waste Commission, consisting of the Commissioners of the Department of Consumer Affairs (which previously regulated the carting industry), the Departments of Sanitation, Business Services and Investigation and a mayorally-appointed chairperson. The Organized Crime Control Commission, created pursuant to a charter revision provision approved by voters in November 2001, took over the Trade Waste Commission, the Gambling Control Commission and other agencies or units regulating the food, transportation and shipping industries. LocpI Law No. 1 (2002) of the City of New York, effective July 29, 2002, changed the name of the Organized Crime Control Commission to the Business Integrity Commission. Administrative Code § 16-503 makes the Trade Waste Commission “responsible for the licensing, registration and regulation of businesses that remove, collect or dispose of trade waste

. Local Law No. 42 § 14 (iii) (a) allowed any DCA licensed carter to continue operating pending the Commission’s determination of its new license application provided that such DCA licensee submitted its new license application to the Commission by August 30, 1996. Petitioner’s license application filing on August 28, 1996 thus perpetuated its operations.

. “Local Law 42 render[ed] all existing carting contracts terminable on 30 days’ notice by either customer or carter, unless the *423 carter obtainfed] a new license from the Commission, or applie[d] for and receive[d] a waiver of the 30-day termination clause, upon a showing that a waiver ‘would not be inconsistent with the purposes of this act’ ” (D & D Carting Co. v City of New York, 172 Misc 2d 544, 545-546 [1997]).
Respondents’ counsel has explained that the need to process about 200 applications from formerly licensed trade waste haulers for waivers of the 30-day contract termination provision involved in-depth character and fitness reviews of the companies and their principals. Such processing, according to respondents’ counsel, took several years and, in turn, delayed the Commission’s review of the approximately 1,600 license and registration applications filed under the new law.

. Petitioner was required to submit a response on August 9, 2002 after having already been granted two extensions. However, on August 7, 2002, a Commission attorney contacted petitioner’s counsel and learned that petitioner had not yet received several missing transcript pages. Those pages were faxed to petitioner on August 7, 2002. On August 8th, petitioner’s counsel sought another extension to respond to the recommendation, but this request was denied by the Commission’s attorney.

. Petitioner contributed $18,000 to the WPA during this period, according to respondents’ decision.

. The WPA pleaded guilty in the summer of 1997 to criminal restraint of trade, according to respondents’ decision.

. “Frank DeCostello, Sr. concedes in his affidavit that ‘my testimony before the Commission was largely rambling, non-responsive and unintelligible because I did not directly answer the questions.’ ”

. The findings that there was sufficient probative evidence to support a rational basis for respondents’ determination equally moots petitioner’s request for the court to conduct a de novo evidentiary hearing or to substitute its own judgment for that of respondent.

. The denial of an application to waive the 30-day termination requirement of Local Law No. 42 does not constitute a deprivation of a property right of petitioner (Vigliotti Bros. Carting Co. v Trade Waste Commn. of City ofN.Y., NYLJ, Dec. 24, 1996, at 26, col 5). In addition, the fact that respondents reached “a determination on written submissions, rather than an evidentiary hearing[,] was sufficient to satisfy due process requirements” (id).

. That provision pertinently provides that:
“The only questions that may be raised in a proceeding under this article are: . . .
“3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed”
(CPLR 7803 [3]).

. That provision provides that:
“The only questions that may be raised in a proceeding under this article are: . . .
“4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence” (CPLR 7803 [4]).

. That provision pertinently provides that:
“Where the substantial evidence issue specified in question four of section 7803 ... is raised . . . the court shall make an order directing that [the proceeding] be transferred for disposition to a term of the appellate division held within the judicial department embracing the county in which the proceeding was commenced” (CPLR 7804 [g]).